In the Matter of the Application for Ancillary Letters of Administration upon the Goods, Chattels and Credits of JAMES D. PROUT, Deceased.

Under the provision of the Code of Civil Procedure (§ 2699), declaring that "before ancillary letters of administration are issued, the person to whom they are awarded must qualify in the manner prescribed for the qualification of an administrator upon the estate of an intestate, except that the penalty of the bond may, in the discretion of the surrogate, be in such a sum, not exceeding twice the amount which appears to be due from the decedent to residents of this state," the power of the surrogate is not limited to requiring a bond not exceeding twice the amount appearing to be due to residents.

Said provision was intended to give the surrogate a discretion to modify the general rule (§ 2667), which requires a bond in a penalty not less than twice the value of the personal property and to accept one less in amount if, by reason of adequate security having been already given, additional security for the protection of the general interests is not in his judgment required, or where the next of kin have consented to waive security, and in the case of domestic creditors, where their protection was the only interest involved, to prescribe a limit beyond which security should not be exacted.

Where, therefore, adequate security to protect the general interests had not been given, and other interests aside from those of domestic creditors were involved, *held,* that the surrogate had power to require as a condition of granting ancillary letters, a bond in the penalty of double the value of the personalty in this state.

(Argued May 7, 1891; decided June 2, 1891.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 18, 1890, which affirmed an order of the surrogate of Kings county denying the petitioner's application.

The nature of the proceedings and the facts, so far as material, are stated in the opinion.

*William J. Groo* for appellant. On granting ancillary letters of administration, the surrogate cannot require a bond exceeding twice the amount which appears to be due creditors in this state. (Code Civ. Pro. §§ 2667, 2698, 2699 ; *In re Musgrave*, 5 Dem. 429 ; *Moyer* v. *Weil*, 1 id. 71 ; *Evans* v. *Schoonmaker*, 2 id. 249 ; *In re McEvoy*, 3 Law Bull. 31 ; *Lynes* v. *Coley*, 1 Redf. 405 ; 14 Abb. Pr. 461.)

*G. H. Crawford* for respondent. The granting of secondary or ancillary letters of administration is a well established feature of English probate practice. (1 Williams on Ex. 361, 362 ; 2 R. S. chap. 6, art. 2, §§ 31, 42.) The change to the law as it stands expressed in section 2699 of the Code of Civil Procedure, was made, without doubt, to obviate the hardship of compelling an administrator who had already given ample security in the domicile of the deceased to furnish additional security here, and section 2699 is to be construed with due regard to this fact. (*Hart* v. *Cleis*, 8 Johns. 44.) The surrogate had the right, in the exercise of a sound discretion, to make the order appealed from. (Code Civ. Pro. § 2699.) Upon this appeal, the infant child of James D. Prout should have been brought before the court, because he is most certainly a party interested in the subject-matter of the order appealed from. (Code Civ. Pro. § 2573.) The rule that personal property follows the domicile of the owner, made the securities of decedent, which were in Brooklyn, just as much a part of his estate as if they had been in New Jersey. (*Cutler* v. *Wright*, 22 N. Y. 474 ; Code Civ. Pro. § 2667 ; *Monroe* v. *Douglass*, 5 N. Y. 447 ; *Savage* v. *O'Neil*, 45 id. 298.)

ANDREWS, J. The question turns upon the power of the surrogate to require an administrator's bond in double of the value of the personal estate, in this state, of James D. Prout, who at the time of his death was a resident of New Jersey,

as a condition to the grant of ancillary administration. The personal estate of the decedent at the time of his death, consisted of personal effects of the value of about $2,500, in New Jersey, and of stocks and securities of about the value of $40,000, deposited with a safe deposit company in the city of Brooklyn. On the 1st day of August, 1889, letters of administration were issued by the Probate Court of New Jersey to the widow of the decedent upon her petition setting forth that the personal estate of the decedent in that state did not exceed the sum of $2,500. The administratrix on the granting of the letters, executed her bond with sureties in the penal sum of $5,000, to the surrogate of Monmouth county, New Jersey, where the decedent resided, conditioned to account for the personal estate of the intestate "in the state of New Jersey," which has or shall come to her hands. The petitioner did not disclose in her petition the fact that there was any other personal estate of the decedent beyond what was in his actual possession in that state at his decease.

On the 1st day of April, 1890, the widow, who with her infant child had become a resident of Brooklyn, applied to the surrogate of Kings county by petition, for ancillary letters of administration, the petition setting forth among other things the granting of the letters in New Jersey, and that the decedent left personal estate in Kings county of the value of about $40,000, that one Moses P. Prout, of Brooklyn, is or claims to be a creditor of the decedent, and that there was no other person claiming to be a creditor known to the petitioner. The surrogate thereupon issued a citation to creditors of the decedent and on the hearing Moses P. Prout presented affidavits to the effect that the decedent was indebted to him in the sum of $7,371.73, with interest; that the decedent at his death was the owner of securities to the amount above mentioned, deposited in a safe deposit company in Brooklyn; that the only security given by the administratrix was the bond of $5,000, and that she had no pecuniary responsibility apart from her interest as widow in the estate of the decedent. The surrogate made an order that ancillary letters be granted to the widow on condi-

tion that she should give a bond, with sureties, to be approved by the surrogate, in a penalty of double the value of that part of the personal estate of which the deceased died possessed, which at his death was within the county of Kings.

The administratrix appeals from the order on the ground that the surrogate had no power to require a bond upon the application for ancillary letters, in a penalty exceeding twice the amount of the debts owing by the intestate to creditors within the state. This question depends upon the true construction of section 2699 of the Code of Civil Procedure. That section is as follows: "Upon the return of the citation, the surrogate must ascertain, as nearly as he can do so, the amount of debts due, or claimed to be due, from the decedent to residents of the state. Before ancillary letters are issued, the person to whom they are awarded must qualify, as prescribed in article fourth of this title, for the qualification of an administrator upon the estate of an intestate; except that the penalty of the bond may, in the discretion of the surrogate, be in such a sum, not exceeding twice the amount which appears to be due from the decedent to residents of the state, as will, in the surrogate's opinion, effectually secure the payment of those debts; or the sums which the resident creditors will be entitled to receive, from the persons to whom the letters are issued, upon an accounting and distribution, either within the state or within the jurisdiction where the principal letters were issued."

If the surrogate had power to impose, as a condition to the granting of letters ancillary, that the administratrix should give a bond to secure the whole fund which might come to her hands by virtue of such letters, the imposition of the condition was a discreet exercise of such power. The general rule in this and other states requires that the administrator should give security in double the value of the personal estate of an intestate before assuming the administration. The actual location of the personal estate or of the securities by which it is represented, is not under our statute material in determining the amount of the bond in a case of purely domestic

administration, for the rule that personal property is deemed to follow the person of the owner, fixes the legal possession in the intestate at his place of residence, wherever in fact the property may be. Where the administrator has properly qualified and assumed the administration in the state of the domicile, he is invested with power to receive the debts owing to the intestate and take possession of the securities and give proper acquittances wherever the debtors or securities may be, whether within or without the state. But where the debtor or the securities are in a foreign jurisdiction, and are not voluntarily paid or surrendered to the administrator of the place of the domicile of the intestate, the courts of the foreign jurisdiction will not enforce the recovery of the debts or securities upon his application until he has procured ancillary letters or a new administrator has been authorized under the laws of the place where assets may be. It is unnecessary to enter into the reasons of this rule. They are familiar and the rule has been frequently recognized. (See *Parsons* v. *Lyman*, 20 N. Y. 103 ; *Despard* v. *Churchill*, 53 id. 192 ; *In re Hughes*, 95 id. 55.)

The unquestioned rule of the common law that the succession to and the distribution of the estate of an intestate is governed by the law of the domicile, makes security there taken on the granting of letters of administration covering the whole personal estate of the intestate, an adequate protection to all parties interested, and where ancillary letters are applied for in another state or jurisdiction, there would not seem to be any necessity that additional security should be required were it not for another principle almost universally recognized, that the claims of creditors living in a jurisdiction where ancillary letters are sought, are entitled to have their just right in the assets of the intestate secured by a proper bond as a condition of granting the application. To this end security is usually required to be given by the applicant for ancilliary administration enforceable in the tribunals of the place for the protection of creditors therein residing. The course of legislation in this state upon the subject of ancillary

administration and the security required may be briefly stated. The Revised Statutes enacted that "every person appointed administrator" should give a bond in a penalty not less than twice the value of the personal estate of which the deceased died possessed. Provision was made for granting letters on the application of foreign executors or administrators where persons, not inhabitants of this state, shall die leaving assets here. (§ 31.) There was no provision exempting persons applying for ancillary letters from the operation of the general rule declared in section 42, and it would seem that they, as well as domestic administrators, were required to give a bond in a penalty twice the value of the property upon which administration was sought. Section 2699 of the Code of Civil Procedure undertook to define the practice on the application for ancillary administration, which was left much at large under the Revised Statutes. In construing the section the various conditions to be provided for may justly be considered. There may be domestic creditors entitled to protection. The assets in this state may be less or more than sufficient to provide for the rights of citizens here. Or again there may be no creditors. Ancillary letters may become necessary to enable the administrator or executor to recover assets by hostile proceedings out of the jurisdiction where the principal letters were issued. It is contended on the part of the appellant that on an application for ancillary letters under section 2699, no security can be required in any case, exceeding twice the amount of claims of domestic creditors and that the discretion of the surrogate is only to be exercised within this limit. It is evident that this construction would in the present case defeat the general policy which requires an administrator to give adequate security for the whole estate which may come to his hands. The security given in New Jersey was limited to the sum of $5,000, double the value of the personal estate of the intestate in his actual possession there, taking no account of the much larger amount in this state, and this course seems to have the sanction of the New Jersey courts. (*Lewis* v. *Grognard*, 17 N. J. Eq. 425.)

The contention of the appellant, if sustained, would enable the administratrix to take into her possession $40,000 in securities belonging to the estate, without any security except a bond not exceeding double the amount of the debt of $7,305, alleged to be due to Moses P. Prout. It may be that the primary purpose of section 2699 was the protection of domestic creditors. The citation is required to be issued to creditors only (§ 2698). The legislature may have assumed that proper and adequate general security would be exacted by the law of the place of the principal administration. But although the language of section 2699 is vague, we think it is capable of a construction which will subserve the general policy of the law. The legislature in this section first declares a general rule, that before ancillary letters are issued, the person to whom they are awarded must qualify as provided in the fourth article of the title for the qualification of an administrator upon the estate of an intestate. Referring to the fourth title it is found that section 2667 prescribes as one of the acts to be done by an administrator, to qualify him for the office, that he shall execute a bond in a penalty not less than twice the value of the personal property of which the intestate died possessed, subject to certain exceptions, one of which is that with the consent of all the next of kin of the intestate, the bond may, upon notice being given to creditors, be limited to twice the amount of their debts. The exception in section 2699, was we think intended to give the surrogate a discretion to modify the general rule declared in the preceding clause and to accept a bond less in amount than that prescribed in ordinary cases of administration, if by reason of adequate security having already been given, additional security for the protection of the general interests was not in his judgment required, or where the next of kin had consented to waive security, and in a case of domestic creditors where their protection was the only interest involved, to prescribe a limit beyond which security should not be exacted.

It is somewhat difficult to so construe the language. But the solicitude with which courts guard the rights of infants

and persons standing in the relation of beneficiaries of trusts, and the uniform policy in respect of security required of administrators, justify the court in going to the verge of construction in order to protect parties so situated and to carry out the general policy of the law.

We think the order should be affirmed.

All concur.

Order affirmed.