**THOMAS et al. v. ZONING BOARD OF AD-JUSTMENT OF CITY OF UNIVER-SITY PARK et al.**

**No. 2871.**

Court of Civil Appeals of Texas. Eastland.

June 15, 1951.

Rehearing Denied Sept. 7, 1951.

Hugh S. Grady and Robert C. Johnson, Dallas, for appellants.

Carter, Gallagher & Barker, Dallas, for appellees.

GRISSOM, Chief Justice.

Cullen S. Thomas and Olga S. Thomas have long owned and occupied as their residence land in that portion of University Park designated in its zoning ordinances as a "single-family dwelling district." Said home consists of about four acres of land on which is located their residence, servant's house, garage and accessory improvements used as a part of such residence. On said premises the Thomases have a barbecue pit, swings and other facilities which they use as incidental and accessory to their residence. The Thomases wish to build a small private swimming pool, 17 by 42 feet, in their back yard, to be used in a quiet, orderly and sanitary manner, solely for their own private use, recreation and enjoyment in connection with and as a part of their residence. They do not intend to use said pool for a public or commercial purpose. The proposed location is in accord with the location requirements of the ordinance.

In July, 1949, the Thomases filed application for a permit to build said private swimming pool. The building inspector and city clerk refused to issue a permit. The Thomases appealed to the Board of Adjustment. The Board affirmed the ruling of the building inspector and the Thomases appealed to the district court. The court denied the Thomases any relief and they have appealed.

The court filed findings of fact and conclusions of law. Among other things, it concluded that (1) a swimming pool is not such an accessory or subordinate use as naturally appertains to and customarily follows as a mere incident to the use and enjoyment of premises and buildings as a

single-family dwelling, within the meaning of Section 4 of the Zoning Ordinance; (2) a swimming pool is not an accessory building permitted under paragraph C, Section 4; (3) a swimming pool is expressly prohibited by paragraph D, Section 5; (4) Section 17 permits the construction of a swimming pool, public or private, only in the event that after a public hearing, held after due notice, the Board of Adjustment shall grant such permit, after having found (a) that the public convenience and welfare will be substantially served, and (b) the appropriate use of neighboring property will not be substantially or permanently injured and, further, that such permit may be granted only in a specific case to prevent undue hardship.

The portion of the zoning ordinance chiefly in question is Section 4 which regulates a single-family dwelling district. So far as deemed pertinent here, it provides:

"B. Use Regulations: A building or premises or lot shall be used for the following, but only the following, purposes and every building erected or structurally altered shall be designed and arranged to be used and adaptable to use for only the following purposes:

"(1) Single-Family Dwelling, or,

"(2) A Church, Chapel, Library, Public Park, College, Public Elementary School, Public High School, or a private school having a curriculum equivalent to a Public Elementary or High School * * *.

"(3) A Telephone Exchange, provided no public business office and no repair or storage facilities are maintained, and,

"(4) Such accessory or subordinate uses as naturally appertaining thereto and customarily follow as a mere incident to the use and enjoyment of premises and buildings for any of the above uses permitted by this Section and actually made of the premises, but not involving the carrying on of any business, trade or professional practice on the premises * * *."

"C. Accessory Buildings: The following but only the following, shall be permitted as accessory buildings:

"(1) One private garage * * *.

"(2) (a) Servant's quarters, or other accessory buildings * * *.

'  *      *      *      *      *      *

"D. Every use not hereby specifically authorized and permitted is expressly prohibited in the 'A' Single-Family Dwelling District and nothing herein shall authorize or be construed to permit the use of any part of premises within the 'A' Single-Family Dwelling District for the purpose of conducting or carrying on of any business, trade, or professional practice * * *."

Appellants' first four points are as follows:

"Point No. 1: The Court erred in rendering judgment against Appellants because, as a matter of law, Appellants are entitled to construct and use the proposed private swimming pool solely for their own private recreation, enjoyment and convenience in connection with and as a part of their use of their homestead for single-family dwelling purposes under the Zoning Ordinance of University Park.

"Point No. 2: The Court erred in holding that the proposed use of their home premises is not an accessory or subordinate use permitted by and within the meaning of Section IV of said Zoning Ordinance.

"Point No. 3: The Court erred in holding that the proposed private swimming pool structure is not an accessory structure permitted by and within the meaning of Section IV of said Zoning Ordinance.

"Point No. 4: The Court erred in holding that the construction and use of said private swimming pool solely for Appellants' own private use, recreation, enjoyment and convenience in connection with and as a part of their homestead for residential purposes is expressly prohibited by said Zoning Ordinance in an 'A' Single-Family Dwelling District."

Mr. Landon, who is the president of a company engaged in building swimming pools, testified, without contradiction, that he had been in the business of building swimming pools for fifteen years; that you usually find private swimming pools in connection with private homes in the better residential areas and in the wealthy sections of town; that private swimming

pools in connection with private homes are so widely used that they have become an accessory used in connection with homes of the character involved in this suit; that there is a definite trend toward the better homes having pools in connection with their outdoor living, the same as barbecue pits, tennis courts, and the like.

Appellees stipulated that appellants were entitled to construct and use the proposed private swimming pool if it is not prohibited by the zoning ordinance in question. It was agreed that the proposed pool would be used in a quiet, orderly and sanitary manner and that the engineering, design and facilities provided in the plans and specifications are in all things proper and satisfactory. Encroachment of public or business activities into a residential district is not involved. It was stipulated that appellants have owned and used continuously, for more than 20 years, the land on which they propose to construct a swimming pool and on which their residence is situated; that said land is appellants' homestead; that it is located in one of the most expensive residential sections of Dallas County and consists of about four acres of land, improved with a large and expensive residence, with servant's house, garage and many "accessory improvements usually used as a part of such a residence and homestead;" that appellants proposed to build said small private swimming pool solely for their own private use, recreation and enjoyment in connection with and as a part of their residence; that appellants neither intended nor proposed to use said pool for a public or commercial purpose; that for many years appellants have used this property as a homestead and, as an incident to its enjoyment, have placed thereon a barbecue pit, swings and other facilities, which they have used as incidental and accessory to said home; that the Board of Adjustment has heretofore granted to two other applicants in said district permits to build larger private swimming pools on smaller tracts of land.

■ After careful consideration, we are of the opinion that appellants' first four points must be sustained. We conclude that appellants, as a matter of law, are entitled to construct and use the proposed private swimming pool, solely for their own private recreation, enjoyment and convenience in connection with and as a part of their use of their homestead, under said Zoning Ordinance. We hold that the proposed use of appellants' premises is an accessory or subordinate use permitted by the Zoning Ordinance; that the proposed swimming pool is an accessory structure permitted by said ordinance and that its construction and use for said purposes, in connection with and as a part of their use of the homestead, is not prohibited by said ordinance.

The ordinance provides that such premises may be used only for a single-family dwelling and (4) "such accessory or subordinate uses as naturally appertain thereto and customarily follow as a mere incident to the use and enjoyment of the premises and buildings for" a family dwelling, "but not involving the carrying on of any business, trade or professional practice on the premises * * *."

■■ Zoning laws are in derogation of common-law rights to the use of property and are subject to strict construction. They should not be extended by interpretation to cases not clearly within their scope and purpose. Exceptions favoring property owners should be liberally construed in their favor. 62 C.J.S., Municipal Corporations, § 226, page 480.

In Kenney v. Building Commissioner of Melrose, 315 Mass. 291, 52 N.E.2d 683, 684, 150 A.L.R. 490, the petitioner desired to erect in the rear of her residence a garage joined by an enclosed passageway to a conservatory 11 by 24 feet in which conservatory she intended to cultivate plants and flowers for use in her own home. Only the right to build the conservatory was questioned. The ordinance provided that within said residential district "no building or premises shall be used and no building or structure shall be erected except for dwelling houses and other specifically enumerated purposes," among which were "Accessory purposes such as are proper and usual with residences for one family and are not in-

jurious to a neighborhood as a place for such residence." The court sustained petitioner's contention that use of a conservatory was a use authorized by the zoning ordinance "as it is an accessory * * * which is 'proper and usual with residences for one family.' "

The words accessory, subordinate and incident, when used in connection with buildings, or the use of premises, denote relation of one building or use to another. A use is subordinate when it is ancillary or auxiliary to the principal use. Lowry v. City of Mankato, 231 Minn. 108, 42 N.W.2d 553, 556. Accessory means an adjunct or accompaniment. Louis Werner Saw Mill Co. v. White, 205 La. 242, 17 So.2d 264, 270. In this connection, see Steele v. Connecticut General Life Insurance Co., 31 App.Div. 389, 52 N.Y.S. 373, 379 and Zangerle v. Republic Steel Corp., 144 Ohio St. 529, 60 N.E.2d 170, 177; Bryan v. Darlington, Tex.Civ.App., 207 S.W.2d 681, R.N.R.E.

In Mamlin v. United States, 77 F.Supp. 930, 933, 111 Ct.Cl. 596, it was held that an accessory to an airplane is a thing which may accompany a complete airplane and contribute in a secondary way to the convenience or effective use of the aircraft, but which is not essential. See also Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 423, 74 L.Ed. 1051.

In Village of St. Louis Park v. Casey, 218 Minn. 394, 16 N.W.2d 459, 155 A.L.R. 1128, the Supreme Court of Minnesota construed a zoning ordinance limiting use of property to those uses customarily incident to private dwellings, when not involving the conduct of a business. It held that radio poles in the rear of an owner's residence, with masts 30 and 60 feet in height, respectively, held by guy wires fastened to posts set in concrete, were structures, within the meaning of a zoning ordinance that permitted a use customarily incident to use of a residence. Furthermore, the court took judicial notice that radio receiving and sending stations were commonly operated by amateurs in connection with their residence. Use of an athletic stadium has been held an accessory use incidental to use of a high school. The sale of candy and soft drinks has been held incidental to the use of a hotel. See Flagg v. Murdock, 172 Misc. 1048, 15 N.Y.S.2d 635; Buffalo Park Lane v. City of Buffalo, 162 Misc. 207, 294 N.Y.S. 413; Appeal of Hasley, 151 Pa.Super. 192, 30 A.2d 187; Western Theological Seminary v. City of Evanston, 325 Ill. 511, 156 N.E. 778.

The use regulation permitted a building or premises to be used for single-family dwelling purposes, together with accessory or subordinate uses naturally appertaining thereto and customarily following as incidental to the use and enjoyment thereof for the principal use, that is, for a single-family dwelling, but not involving the carrying on of any business or profession. The use purposes are expressed in broad language and described in a generic sense. It is evident that the dominant purpose of establishing a residential district was to restrict the use of buildings and premises to residential as distinguished from business uses. The ordinance evidences no intent to prohibit any purely residential activity. The use provision presents the question of whether a private activity carried on by a family for the sole purpose of recreation and pleasure, in connection with and as a part of the use of their home, is prohibited by the ordinance. The ordinance expressly provides that a building or premises shall be used for the purposes of a single-family dwelling. The ordinance does not define those purposes. While occupancy of the house and premises is limited to one family, the use provided is the use which a family may make of the premises as a home. The ordinance does not attempt to define or limit the many activities that may properly be engaged in there by the use of such property by a single family as a home. It follows that the broad sphere of home activities as they existed at common law and as known today, with the exception only that the property can be occupied by only one family and cannot be used for business or any public purpose, is unrestricted. As stated by appellants, the ordinance leaves intact the common law concept of the home as a social institution, carried on not simply for the bare purpose

of food and shelter for the family, but, equally, for the private religious, educational, cultural and recreational advantages of the family in the home. Insofar as the latter activities are concerned, no limitation thereon is contained in the ordinance. In these respects the single family home use is as broad as if there were no zoning ordinances. Use by a family of the home, under our customs, includes much more than simple use of a house and grounds for food and shelter. It also includes its use for private religious, educational, cultural and recreational advantages of the family.

Our Supreme Court, in Wilson v. Cochran, 31 Tex. 677, 680, in defining a family, said: "It * * * embracing a household, composed of parents or children, or other relatives, or domestics and servants: in short, every collective body of persons living together within one curtilage, subsisting in common, directing their attention to a common object, the promotion of their mutual interests and social happiness."

The case of Panhandle Construction Co. v. Flesher, Tex.Civ.App., 87 S.W.2d 273, 274, illustrates the breadth of activities commonly embraced within the use of property as a homestead. Some lots were separated from the lot on which the residence stood by an alley traveled by the public. These lots were used only as a playground by children of the family who played tennis, basketball, croquet and baseball thereon. These activities were held to be such a use of the separated lots for home purposes as to impress them with the homestead character. The court said: "* * * if such (homestead) claim can be supported by proof of use of same as a stable or lot for a jackass, one based upon use as a playground, where the health and happiness of children are involved, ought to be sustained."

In Ashton v. Ingle, 20 Kan. 670, 27 Am.Dec. 197, the Supreme Court of Kansas said: "* * * the word 'homestead' does not include merely the dwelling house, but it also embraces everything connected therewith which may be used and is used for the more perfect enjoyment of the home * * *. The word 'residence', like the word 'homestead' is not defined merely as the dwelling house but it may also include everything connected therewith, used to make the home more comfortable and enjoyable."

In Rock Island Plow Company v. Alten, 102 Tex. 366, 116 S.W. 1144, our Supreme Court said that there might be more than one lot constituting the homestead; they might be disconnected, provided, they be used for the purpose of a home, that is, for such uses as contribute to the enjoyment of the home.

In Anderson v. Sessions, 93 Tex. 279, 51 S.W. 874, 876, the court said: "If playgrounds, and shady parks with graveled walks, used only for pleasure or ornamentation, are protected, because used for the purposes of a home, we think that a little garden spot, although in a distant suburb of the town, would not be an improper or an unreasonable addition to the homestead, where it is used for the purpose of supplying the home table with the necessaries and comforts of life * * *."

The foregoing statements and decisions are referred to for the purpose of showing how far the law has gone, in homestead cases, in holding that use of premises, comparable to the use which the Thomases desired to make of their premises, have been recognized as proper uses to impress lots with the homestead character. The right to privately swim on one's own premises is not different from the right to play tennis or croquet, or operate a barbecue pit there. Since the ordinance designates the use of the property as residential and contains no provision against swimming, and since none arises by necessary implication, we think appellants' common law rights to engage in such an activity in the use of their home is not limited by the ordinance. Furthermore, the right to so use the premises is granted by paragraph 4 of Section 4, which authorizes such accessory or subordinate use of the home as naturally appertains thereto and customarily follows as a mere incident to the use and enjoyment of the premises and building for

a "single-family dwelling." The primary intent was to allow subordinate uses that did not involve public or business activities. It is significant that the only specific limitation on the general authority to use the premises for purposes accessory or subordinate to its use as a single-family dwelling is against using same for commercial purposes. The premises are occupied primarily as a one-family dwelling. The use of the premises for swimming is an accessory or subordinate use, naturally appertaining thereto, and one which customarily follows as a mere incident to the use and enjoyment of the premises and building as a single-family dwelling.

We conclude that under Section 4, paragraphs 1 and 4, appellants had the right to use, in connection with their dwelling, a swimming pool, which use we conclude is an accessory or subordinate use naturally appertaining thereto and customarily following as a mere incident to the use and enjoyment of the premises and buildings as a single-family dwelling.

We also hold that under paragraph C, Section 4, a private swimming pool is a permitted accessory structure. We here call attention to the fact that under definitions in the ordinance the word "building" includes structure.

Appellees contend the ordinance prohibits construction of a swimming pool in the district, unless it be constructed as a special exception to Section 17; that said section permits the construction of a swimming pool, either public or private, only if the terms of Section 17, B, and (1) be followed and a permit obtained for such construction in accord therewith. Appellees say that otherwise construction and use of a swimming pool is absolutely prohibited. Paragraph (1), Section 17 provides, in substance, that the board of adjustment may, when the public convenience and welfare will be served, after notice, recommend to the board of commissioners and, subject to the approval of the governing body, permit location in any district of a "state or municipal building, public utility plant, church, swimming pool, radio station, philanthropic institution, hospital or sanitarium

* * *." We think it is evident that said provision does not refer to a private swimming pool. 50 Am.Jur., 242, 244.

Appellants' first four points are sustained. It is unnecessary to decide or discuss the remaining points.

The judgment is reversed and judgment rendered for appellants.