OPINION OF THE COURT
Bellacosa, J.
This is a discovery, turn-over proceeding brought by an ancillary administrator (Stern) in New York County concerning property in the Cayman Islands, all with respect to an estate being administered primarily in Mexico. This Court must determine whether the subject matter jurisdiction of the New York Surrogate’s Court extends to the Cayman Islands assets of decedent, a Texas resident and Mexican domiciliary, when the issuance of ancillary letters of administration in New York is predicated solely on a small bank account in this State.
This proceeding was commenced as part of the ancillary administration. It seeks discovery for the location and turnover of approximately $1,300,000 allegedly transferred after decedent’s suicide on April 20, 1990. These assets moved from his investment account with Morgan Stanley Asset Management, Ltd. in London (Morgan Stanley-London) to a trust allegedly created before his death through Barclays Private Bank and Trust Limited (Barclays) in the Cayman Islands.
The petition was amended to pursue particularly the discovery and turnover of the trust assets now in the Cayman Islands. Surrogate’s Court denied motions by respondents, Bar-clays and Morgan Stanley, to dismiss the ancillary administrator’s amended petition. The Appellate Division reversed and Stern appeals pursuant to leave granted by this Court.
We now affirm. The Island of Manhattan can no more declare itself the command center over Mexico and the Cayman Islands with respect to the subject assets in the circumstances of this case today, than the Island of Tobago could pretend to rule the world in 1808 (see, Buchanan v Rucker, 9 East 192, 194, 103 Eng Rep 546, 547 [KB 1808] [“Can the island of Tobago pass a law to bind the rights of the whole world? Would the world submit to such an assumed jurisdiction?” Held, No.]).
I.
While a resident of New York in 1988, Oscar Obregon opened an investment account with Morgan Stanley-London. The initial arrangements were handled by Eugene R. Gonzalez, an *594 officer in the New York office of Morgan Stanley International Inc., and Michael Cowan, an investment manager at Morgan Stanley-London. Obregon deposited over $1,300,000 into the London account through Mellon Bank in New York. Decedent’s marital son, Oscar, was named as beneficiary of the London account.
In early 1989, while still residing in New York City, Obregon sought estate planning guidance from Gonzalez, who was then employed at Barclays. In March of 1990, Obregon contacted Nelson Ramirez, a trust officer at Barclays’ Miami office, to establish a discretionary, inter vivos off-shore trust in the Cayman Islands with Barclays Private Bank using the London funds. Obregon executed a “letter of instructions and WISHES TO ESTABLISH A TRUST AND COMPANY” dated April 16, 1990. It allowed Barclays Private Bank “considerable discretion with respect to the distributions and administration * * * of the income and capital” of the “Faygate Trust.” The Letter of Instructions and Wishes provided that, in the event of Obregon’s incapacity, “the Trustees may act in their absolute discretion should the need arise.” Obregon also faxed an “asset transfer instruction letter” dated April 19, 1990 to Cowan at Morgan Stanley-London authorizing him “to transfer the balance of my Investment Management Account [approximately $1,200,000] to my trust at [Barclays Private Bank]” in the Cayman Islands. Thereafter, Obregon allegedly indicated that he wanted to designate his nonmarital infant son, Christian, who was living in Canada, as beneficiary of the trust funded by the London account.
On April 20, 1990, the decedent committed suicide at his residence in Houston, Texas. Manuel Reyero Conejo (Reyero) is the husband of Obregon’s ex-wife. The latter was sole distributee under Mexican law. Reyero was designated administrator of Obregon’s estate in Mexico. The Mexican Probate Court later declared decedent’s marital son as “the sole and universal heir of this succession” to his father’s estate.
On June 14, 1990, Barclays Private Bank and Morgan Stanley-London agreed that Morgan Stanley-London should manage the assets of the Faygate Trust on behalf of the trustee, Barclays. Thereafter, at the direction of Barclays, Morgan Stanley-London liquidated the trust assets in London and transferred the proceeds to Barclays Private Bank. This was accomplished by a cashier’s check drawn on Citibank, N.A. in New York, purchased by Morgan Stanley-London, payable and transmitted to Barclays Private Bank in the Cayman Islands.
*595 One year after Obregon’s death, Reyero petitioned the Surrogate’s Court in New York for ancillary letters of administration. He alleged that although the only New York estate asset was a bank account with a balance of $1,405, “[t]he real purpose of having ancillary letters * * * is to enable us to conduct discovery proceedings in order to trace in excess of $1,200,000 that has been purportedly transferred to a trust in the Cayman Islands.” Reyero later requested that his attorney in New York, Joel S. Stern, be designated ancillary administrator. On May 16, 1991, ancillary letters of administration were issued to appellant Stern. The order stated that “none of the property be removed from this state without first giving the State Tax Commission sufficient evidence to enable it to ascertain the tax due thereon.”
Stern then sought discovery and turnover of the funds used to establish the Faygate Trust. He alleges that respondents, Barclays Bank PLC and Morgan Stanley Group Inc., participated in the unauthorized transfer of approximately $1,400,000 of decedent’s funds to the Trust from Obregon’s London account after his death. Pegging New York’s conceded power over the unadministered New York bank account to these events and assets, Stern makes claim to the funds in the Faygate Trust on the ground that the trust and transfer were not validly executed as of the time of Obregon’s death.
Surrogate’s Court concluded that it possessed and acquired subject matter jurisdiction over the Cayman Islands trust. The Surrogate asserted in this key respect that an ancillary administrator’s authority “extends to the reach of process of the state’s courts * * * and that an ancillary administrator is not limited to the collection of the asset that furnished the basis for his appointment” (citations omitted).
The Appellate Division unanimously reversed (230 AD2d 47). It held that, other than the de minimis sum in the New York bank account that served as the basis for Stern’s ancillary appointment, the Surrogate’s Court lacked more extensive subject matter jurisdiction in these circumstances and the ancillary administrator enjoyed no supervening authority over Obregon’s extraterritorial assets by way of the ancillary New York proceeding (id., at 51-54, citing Lockwood v United States Steel Corp., 153 App Div 655, 659-660, revd on other grounds 209 NY 375; Matter of Piccione, 57 NY2d 278, 287-291; Matter of Re v Truck-A-Tune, Inc., 191 AD2d 327). Because Stern’s appointment was purely and narrowly ancillary to the Mexican proceeding, the Appellate Division cogently concluded that his *596 authority was limited to property situated within the New York ancillary jurisdiction (id., at 52, citing Lockwood v United States Steel Corp., supra, 153 App Div, at 659-660; McMaster v Gould, 240 NY 379, 388; Dimmerling v Andrews, 236 NY 43; Matter of Rogers, 225 App Div 286, 289, affd 254 NY 592).
Interestingly, after the commencement of this ancillary proceeding, the estate began to pursue whatever remedies it may have against respondents in the Cayman Islands and in the Supreme Court of State of New York (see, e.g., Obregon v Morgan Stanley Group, index No. 97-118415), the principal trial court in New York and the only one with plenary jurisdiction, among New York’s array of trial courts (NY Const, art VI, §7).
II.
The New York State Constitution confers jurisdiction on the Surrogate’s Court:
“over all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates and actions and proceedings arising thereunder or pertaining thereto, * * * and such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law” (NY Const, art VI, § 12 [d]).
The codification of the Surrogate’s Court Procedure Act in 1966 was intended to implement the powers of that court “to permit all matters relating to affairs of decedents to be determined in the court settling the estate” (Mem of Temp St Commn on Estates, Bill Jacket, L 1966, ch 953, at 7 [emphasis added]). The Surrogate’s Court Procedure Act specifies that the Surrogate’s Court’s general jurisdiction encompasses:
“all the jurisdiction conferred upon it by the Constitution * * * and all other authority and jurisdiction now or hereafter conferred upon the court by any general or special statute or provision of law, including this act” (SCPA 201 [1]).
Matter of Piccione (57 NY2d 278, supra) encapsulates the view that, by these grants of power, the “history of the Surrogate’s Court during the twentieth century is one of steadily expanding jurisdiction;” the case explains that “ ‘ “for the Surrogate’s Court to decline jurisdiction, it should be abundantly clear that the matter in controversy in no way affects the affairs of a decedent or the administration of his estate” ’ ” (id., *597 at 287, 288 [citations omitted]). Importantly, however, this Court’s dispositional analysis and holding focused on the general, original jurisdiction of the Surrogate’s Court to authorize discovery with regard to an eviction proceeding concerning New York realty of a domiciliary testator (see, id., at 283).
The Surrogate’s Court Procedure Act also expressly declares that “ [t] he surrogate’s court of any county has jurisdiction over the estate of any non-domiciliary decedent who leaves property in the state” (SCPA 206 [1]). Appellant Stern and the dissent (see, dissenting opn, at 604-605) would project the import of this sentence to sustain an expansive proposition that the New York Surrogate’s Court enjoys plenary subject matter jurisdiction, emanating from an ancillary proceeding, over worldwide estate assets of a nondomiciliary.
To be sure, the prefatory language of SCPA 206 bespeaks no jurisdictional limitations. The provision refers, however, in the main, to venue. Thus, a discerning analysis should not read those words in isolation and acontextually from sections 205 and 207.
In 1984, sections 205 (domiciliaries), 206 (nondomiciliaries), and 207 (lifetime trusts) were enacted collectively to “substitute a flexible ‘venue’ concept for what had been a rigid ‘subject matter jurisdiction’ notion appended to proceedings brought in a surrogate’s court” (see, Siegel and Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 205, 206, at 136, 146). Thus, the addition of SCPA 206 is designed to provide for jurisdiction over State-wide, rather than merely countywide, assets and to remedy problems flowing from commencement of a proceeding in a wrong county (see, Recommendation of NY Law Rev Commn, Bill Jacket, L 1984, ch 128, at 24-26; Letter of Approval from Michael Colodner, Counsel to the Governor, dated Apr. 18, 1984, Bill Jacket, L 1984, ch 128, at 37-38; Approval Mem of NY St Bar Assn, Bill Jacket, L 1984, ch 128, at 42-43). This reformulation does not represent a generalized extraterritorial expansion of subject matter jurisdiction over nondomiciliaries’ estates in ancillary settings (see, SCPA 205, 206; see also, Sponsor’s Letter from Senator Barclay, dated May 24, 1984, Bill Jacket, L 1984, ch 128, at 16). The theory of the dissent appears to proceed largely from the proposition that there can be no restriction on the breadth of the subject matter jurisdiction of New York’s Surrogate’s Court since none is explicitly stated (see, dissenting opn, at 604-605, 607, 608, n). Critically, however, none of these provisions including the linchpin of appellant’s *598 argument — section 206 — refers to ancillary proceedings of the type involved in this proceeding and appeal, a factor pointedly overlooked also by the dissent (see, dissenting opn, at 607-608).
Stern’s hypothesis, in this respect, even fails to overcome or come to terms with the pivotal distinction between general, original administration or probate of a nondomiciliary’s estate and the ancillary type at issue here; the dissent essentially ignores this difference, as well (see, dissenting opn, at 606, 607-608; see also, SCPA 1605; Matter of Heller-Baghero, 26 NY2d 337, 344-345; Wedemann v United States Trust Co., 258 NY 315, 318 [“rules differ in respect to the status of a foreign executor and a foreign administrator as contrasted with the status of an ancillary executor and an ancillary administrator”]; Matter of Turton, 8 NY2d 311; Helme v Buckelew, 229 NY 363, 366 [Cardozo, J.]; compare, SCPA 1602 [ancillary probate], with SCPA 1607 [ancillary administration]).
Thus, in context and taken as a whole, the subject matter jurisdiction of New York’s Surrogate’s Courts is necessarily more embracive when it is the predominant tribunal for administering and preserving estate rights and assets (see, Wedemann v United States Trust Co., 258 NY 315, 318-319, supra; cf., Matter of Turton, 8 NY2d 311, 315, supra [“recognition (must) be given to the fact that there is but one estate and that primary probate or administration proceedings should be undertaken by the appropriate court of the decedent’s domicile, all other proceedings being ancillary”]). On the other hand, traditional approaches and appropriately interpreted authorizations for the exercise of ancillary subject matter jurisdiction have been prudently treated more narrowly — as the circumstances of this case warrant.
Ordinarily, little distinction is drawn between subject matter jurisdiction of domiciliary and nondomiciliary estates in original proceedings. The critical analytical failure to respect this pivotal distinction between plenary subject matter jurisdiction for original domiciliary proceedings may be appreciated better from a careful reading of our cases and the relevant statutes, particularly set against the distinguishable context of nondomiciliary ancillary proceedings. The distinction is so fundamental that it receives separate treatment in the Surrogate’s Court Procedure Act (see, SCPA 1605 [original probate of foreign estate]; see also, Tur ano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1607, at 601; compare, SCPA 1602 [1] [ancillary probate “may operate upon any property in this state”] [emphasis added]; see generally, Matter of *599 Heller-Baghero, 26 NY2d 337, 341, supra). We do not question that a Surrogate’s Court may possess plenary and primary subject matter jurisdiction over the entire estate of a nondomiciliary, unless there is a valid, preexisting proceeding otherwise administering the estate (see, SCPA 1601, 1602, 1605, 1607; see also, Matter of Heller-Baghero, 26 NY2d 337, supra). Nor are we dealing here with the discretionary power of Surrogate’s Court, in the interests of comity, to decline to assert its otherwise plenary original subject matter jurisdiction where a will has been previously probated in another jurisdiction, where the testator has expressed a jurisdictional preference, or where domiciliary laws discriminate against beneficiaries or fiduciaries (see, SCPA 1605; Matter of Heller-Baghero, 26 NY2d 337, supra), or even whether or not to issue ancillary letters (see, SCPA 1607) or whether to determine the decidedly discretionary distribution of assets successfully collected by the auxiliary representative (see, SCPA 1610; Wedemann v United States Trust Co., 258 NY 315, 319-320, supra). Those circumstances are neither this case nor its jurisdictional problem.
III.
We turn then to SCPA article 16, which specifically governs foreign estates and ancillary proceedings. To effectuate the legislative goal of centralized estate administration (see, Turano, Practice Commentaries, McKinneys Cons Laws of NY, Book 58A, SCPA 1601, at 575), section 1601 explicitly declares that “ancillary administration shall be granted in this state only when there is an actual administration in the domiciliary jurisdiction” (SCPA 1601; see also, Wedemann v United States Trust Co., 258 NY 315, 318, supra; Steele v Connecticut Gen. Life Ins. Co., 31 App Div 389, 399, affd 160 NY 703; Turano and Radigan, New York Estate Administration, at 509, 511; 3 Warren’s Heaton, Surrogates’ Courts § 47.02 [2], at 47-16 to 47-17 [6th ed rev]). The Temporary State Commission on Estates in 1966 noted that article 16 “permit[s] our courts to maintain jurisdiction over the property and the fiduciary” through this assistive vehicle (Mem of Temp St Commn on Estates, Bill Jacket, L 1966, ch 953, at 16 [emphasis added]).
We do not quarrel with the general proposition that the “jurisdiction and venue rules of SCPA 206 are applicable to ancillary proceedings” (Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1601, at 576). The supplementary jurisdiction contemplated, however, does not spill beyond the borders of article 16 to rove after assets anywhere in *600 the world (see, dissenting opn, at 606). That would offend the harmonious symmetry of the provisions and would, on the practical side, allow for potentially undue displacement or invidious competition with the principal estate tribunal, instead of simply serving to assist it. Moreover, it is no answer to a subject matter jurisdiction contest that a nondomiciliary estate representative is collaborating with a New York ancillary administrator, a circumstance that will not always be so and is not controlling here, in any event (see, dissenting opn, at 605-606).
Thus, Stern’s argument that the subject matter jurisdiction of the Surrogate’s Court in an ancillary proceeding in New York is coextensive with that of a domiciliary proceeding in Mexico is fundamentally at odds with the purpose and reach of article 16. Because the subordinate proceeding is intended essentially to complement the principal domiciliary proceeding, the ancillary one should not be allowed to eclipse the predominant domain and proceeding just because the ancillary locus may have more efficacious procedural mechanisms to reach “treasure island,” or just because New York is New York.
Consequently, a sensible lid on the subject matter jurisdiction of the Surrogate’s Court in the context of the ancillary administration of this matter is consistent with the inherently supplementary purpose of ancillary proceedings (see, SCPA 1610; Wedemann v United States Trust Co., 258 NY 315, 319, supra; Helme v Buckelew, 229 NY 363, 372, supra; see also, Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1605, at 595 [“if another jurisdiction has granted probate, we cannot grant original probate here (and) are relegated to ancillary probate”] [emphasis added]; Preminger, Thomas, Frunzi and Hilker, Trusts and Estates Practice in New York ¶ 7:5, at 7-4; see generally, Powers, Foreign Estates, 34 Brook L Rev 442 [1967-1968]).
IV.
Appellant further postulates that once an ancillary administrator is duly appointed in New York State, New York courts acquire power to compel turnover of assets wherever located. Stern thus attempts to convert his undisputed, albeit limited, authority as ancillary administrator, into a full-scale search and envelopment over worldwide assets (see, Buchanan v Rucker, 9 East 192, 194, 103 Eng Rep 546, 547 [KB 1808], supra). His strategic and functional objective is to substitute New York for Mexico as the more efficacious focal point for the *601 handling of the estate and to use New York as the power forum. We are not persuaded that there is authority or justification for this triangulated route to the asset located in the Cayman Islands destination. Moreover, we do not see that outreach as a convenient foot-in-the-door comity matter; the jurisdictional threshold must be satisfied first, before New York courts would acquire the competence to pass on discretionary comity factors. Thus, remittal of this case is entirely unwarranted, dilatory and dissipative.
Stern further argues that because the Mexican domiciliary requested Stern’s ancillary appointment, he may circumnavigate the statute and use a New York foothold to reach extraterritorial assets. Parties can neither determine nor reformulate a court’s subject matter jurisdiction (see, Siegel, NY Prac § 8, at 10 [2d ed]), irrespective of their cooperative attitude at a given point on a given strategy. To so hold would encourage forum shopping and redundant or competing estate entanglements to the detriment of all parties and the various forums themselves. The more commonly exercised purpose of ancillary jurisdiction is to protect creditors, not to launch worldwide asset expeditions out of New York to foreign outposts (see, SCPA 1609; Wedemann v United States Trust Co., 258 NY 315, 319, supra; see also, Turano and Radigan, New York Estate Administration, at 510-511; 3 Warren’s Heaton, Surrogates’ Courts § 47.01 [1], [3], at 47-5, 47-7 [6th ed rev]; Powers, Foreign Estates, 34 Brook L Rev 442, 447).
Analogous provisions of the Surrogate’s Court Procedure Act also support our conclusion that the authority of the Surrogate’s Court over a nondomiciliary’s estate in an ancillary proceeding is generally limited to estate assets within New York (see, e.g., SCPA 210 [2] [a]; Siegel and Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 203, at 120 [“SCPA 206 * * * confers jurisdiction on the surrogate’s court of any county in the state to handle administration of the property located in the state”] [emphasis added]; see also, SCPA 1610; Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1610, at 613).
The provisions pertaining to discovery proceedings add persuasive instruction. SCPA 2103 limits access of a fiduciary in discovery petitions to “the court which has jurisdiction over the estate” (SCPA 2103 [1]). Ordinarily, therefore, ancillary administrators should not be able to avail themselves of its benefits because their authority is circumscribed by their assistive role. Our rationale, it should-be emphasized, is rooted in *602 this particular discovery exertion, where the original domiciliary jurisdiction of this estate is lodged in Mexico, and the asset sought to be snagged is in the Cayman Islands, after having been transferred from a London account.
The weight of authority, moreover, supports this demonstrably and intuitively reasonable limitation of subject matter jurisdiction in ancillary proceedings to property within the State (see, Lockwood v United States Steel Corp., 153 App Div 655, 660, supra; see also, Wedemann v United States Trust Co., 258 NY 315, 319, supra; Matter of Rogers, 225 App Div 286, 289, supra [“a proceeding for ancillary administration is directed against assets within the StateQ * * * (s)o in the case of ancillary administration the decree can have no effect except as it may be satisfied by property within the reach of the process of our courts”], affd 254 NY 592, supra; Steele v Connecticut Gen. Life Ins. Co., 31 App Div 389, 400, affd 160 NY 703, supra; 1 Groppe et al., Harris 5th Edition New York Estates: Probate, Administration and Litigation, § 10:119, at 10-32 [1996]; 3 Bowe-Parker, Page on Wills § 26.15, at 46 [rev ed]; Preminger, Thomas, Frunzi and Hilker, Trusts and Estates Practice in New York ¶ 15:117, at 15-22 to 15-23; 3 Warren’s Heaton, Surrogates’ Courts § 47.01 [1]; § 47.07 [1] [6th ed rev]).
V.
Appellant, nevertheless, places significant reliance on Lockwood v United States Steel Corp. (209 NY 375, supra), which, he asserts, equates ancillary and domiciliary proceedings. That generality misses the import of the Lockwood discussion that “an ancillary executor or administrator has the same general powers as a domestic executor or administrator” (id., at 380). The Court added that it did “not perceive that it makes any essential difference in this case whether the letters of the plaintiff executor are ancillary or domiciliary” (id., at 380). Thus, for our analytical and precedential purposes, this apparently expansive language does not support Stern’s sweeping application here, nor the far-reaching premises that the dissent would ascribe to it (see, dissenting opn, at 609).
Our conclusion, within the factual context presented in this case, does not threaten or undermine the holding or the quoted language from Lockwood. Indeed, we are faithful to the still valid statement at the Appellate Division level that “[s]trictly speaking, an executor or administrator, whether domiciliary or ancillary, has as [a] matter of right no extraterritorial authority” (Lockwood v United States Steel Corp., 153 App Div 655, *603 659, supra). Irrespective of less pertinent, general language in this Court’s opinion in Lockwood, the Appellate Division’s articulation in this respect remains undisturbed, despite the reversal on other grounds. It is persuasive, as applied here, that “the authority of an ancillary executor is quite different” from a domiciliary executor or administrator; its further explanation remains cogent that “[t]he jurisdiction to appoint [an ancillary administrator] rests upon the fact that the actual situs of the testator’s personal estate is within the State * * * and it is only over such property that the court issuing the letters has assumed jurisdiction” (id., at 660 [emphasis added]).
Thus, although this Court concluded that “[a]ncillary letters are not less in their effect than other letters” as to jurisdiction-ally affected assets and matters, they also are more confined and not self-defining beyond the ancillary borders (Lockwood v United States Steel Corp., 209 NY 375, 380, supra; see, EPTL 11-1.1 [b] [enumerating fiduciaries’ powers]; SCPA 1610; see also, Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1610, at 613 [“ancillary fiduciary’s job is to marshal the assets, pay any New York claims and taxes, and deliver any remaining assets to the fiduciary in the decedent’s domicile”]). In sum, the obiter dictum of Lockwood should not be transformed, as appellant Stern and the dissent would do (see, dissenting opn, at 609), to enlarge ancillary powers — “derivative” and “complementary” in nature — to a window on the world, equal to or greater than the predicate domiciliary proceeding may enjoy over assets wherever located. Neither statutory interpretation, nor policy reasons, nor practical application of governing principles would support the exercise of such centrifugal power by New York in such circumstances. We reach this conclusion without even considering any potential constitutional concerns.
Our result — premised on these assembled authorities and on the cogent practical analysis we have tendered and that in the opinion by Justice Nardelli at the Appellate Division — is ultimately more consistent with the essential, underlying function of ancillary proceedings: to obtain control and possession of New York assets of a nondomiciliary, to satisfy New York creditors, and to transfer remaining assets to the domiciliary administrator (see, SCPA 1609; see also, Turano and Radigan, New York Estate Administration, at 510-511; 3 Warren’s Heaton, Surrogates’ Courts § 47.01 [1], [3] [6th ed rev]; Powers, Foreign Estates, 34 Brook L Rev 442, 447). To venture beyond the backup role and border in this case is demonstrably unwarranted.
*604 Accordingly, the order of the Appellate Division should be affirmed, with costs.