## NIESEN, Sr., Estate of, In re.

Probate Court, Hamilton County.

No. 169678. Decided November 28, 1951.

John C. McCarthy, Cincinnati, for E. H. Niesen, exceptor.

Sarah G. Krusling, Cincinnati, for Alma C. Niesen and Charlotte Krusling, executrices.

Frank G. Davis, Cincinnati, for Frank Niesen, Jr.

## OPINION

By DAVIES, J.

This matter comes before the court upon the exceptions of E. H. Niesen to a current account filed by the fiduciaries in the estate of Frank Niesen, Sr., who died on February 23, 1948, for the reason that "the same does not account for any of the rents received on the garages in the rear of the family residence," the exceptor being an heir of, and devisee under the will of, said decedent.

The testator's will, which is dated September 19, 1939, after providing for the payment of debts and funeral expenses, and after making certain specific bequests, directs the executors to sell all the real estate of which the testator died possessed, and to divide the residue of his estate among his eight children, all of whom survived him.

Item 9 of said will reads as follows:

"I direct that my daughters Emma Niesen, and Alma Niesen, and Charlotte Krusling with her three children be permitted to live at my home 523 East Liberty Street, Cincinnati, Ohio, rent free for a period of four years after my decease."

The testimony shows that the testator, at the time of the execution of his will and continuously until his death, occupied as a home the premises described in Item 9. The testimony further shows that the said property described as 523

East Liberty Street consists of a small city lot upon which is located a dwelling house which fronts on East Liberty Street, and a two-car garage, which fronts upon, and is entered from, an alley which runs along the rear of the lot and which garage was used by the testator for the storing of his and other people's automobiles.

The exceptor, E. H. Niesen, claims that the testator, as shown by the language of his will, did not intend that Emma Niesen, Alma Niesen and Charlotte Krusling should be permitted the use "rent free" of the garage, but intended that they should be permitted to occupy only the residence as a **home** "rent free" for a period of four years after his father's decease. The exceptor's sisters, mentioned in Item 9, however, claim that their father intended, by use of the word "home" in his will, to permit them to live at and use both the dwelling house and garage "rent free" for the four year period following the testator's decease.

Other parts of the testator's will do not indicate whether he intended the word "home," found in Item 9, to include the dwelling alone, or both the dwelling and the garage.

It is well settled in Ohio, as shown by the numerous cases cited in **40 O. Jur., 590,** et seq., that the cardinal rule of interpretation of a will is to ascertain and give effect to the intention of the testator; that this intention must be ascertained from the language used in the will, as applied to the subject matter, and read in the light of surrounding circumstances at the time of the execution thereof; that the intention of the tesator is to be gathered from the whole will; that words used in a will are flexible and capable of many shades of meaning and are to be construed in accordance with their ordinary use and meaning, unless it appears from the context and other provisions of the will that the testator has used them in a different sense.

The word "home" is ordinarily defined as one's own dwelling place; the house in which one lives; especially the house in which one lives with his family; the habitual abode of one's family. Webster's New International Dictionary.

In Marston v. Stickney, 58 N. H. 610, the court held that "a grant or devise of a dwelling house will convey the buildings belonging to it, its curtilage, garden, orchard and the land on which the house is built."

In Pruyn v. Sears, 161 N. Y. Supp. 58, wherein the testator devised to his wife his family residence, it was held that a barn on the same lot with the house, which was formerly used for the testator's team of horses and his automobile, but later, and at the time of his death, was used for the purpose of

storage and for the sale of automobile accessories by one of the testator's sons, passed to the widow, because the barn was built upon the same lot and used for the purposes incidental to the family residence.

In the case of Graham v. Heidrick, 204 Pa. 238, 53 Atl. 1002, the court, in construing a provision in a testator's will that his wife should occupy his "home and residence during her life" and "also my daughter as long as she remains single," held that the testator intended the term "home and residence" to include not only the dwelling and buildings, but also the farm upon which the dwelling and buildings were located. The court pointed out that the testator, during his lifetime, ordinarily would make no distinction between the buildings and the land. He would say "my home," "my farm," "my place, where I live," meaning by each appellation his entire farm property, and would be so understood by his neighbors. The court pointed out that, unless possibly in an application for fire insurance, the testator would not use the word "buildings" as distinguished from the farm on which they were erected, and the court concluded that it is highly improbable that he intended to provide nothing more than a roof to shelter his surviving spouse.

In the case of Chase National Bank, et al. v. Deichmiller, et al., 107 N. J. Eq. 379, 152 A. 697, the court was asked to construe the meaning of the word "home" used in a devise, by the terms of which the testator created a trust for the benefit of his wife during her life or widowhood in his "home known as Brookside Lawn," which consisted of a small farm, in addition to the dwelling house, a barn, garage and chicken house. The court held that the word "home" means not only "dwelling house," but the entire residence estate, including all of the land and buildings thereon, and pointed out that "the natural meaning of the word 'home' is broader than that of the word 'dwelling house.'"

In determining what constituted a homestead under the bankruptcy laws, a Federal District Court, In re Shepardson, 28 F. (2d) 353, found that the fact that a bankrupt occupied a ten acre tract of farm land, which was divided into two plots by a country road, on one of which the bankrupt and her husband lived, and on the other of which they maintained a gasoline filling station, small store and cabins for travelers on a highway did not deprive the bankrupt of the right to claim a homestead exemption in the whole tract. The court reasoned that the whole premises were necessary and convenient for the use of the bankrupt and her family as a place of residence, independent of the business conducted on said premises, and that said business was incidental and subordinate

to the use by the bankrupt and her family of said premises for a home and that the entire premises were impressed with the homestead.

The court, in the case of Gregg, et al. v. Bostwich, et al., 33 Cal. Rep. 220, held that the word "homestead" represents the dwelling house at which the family resides, with the usual and customary appurtenances, including outbuildings of every kind necessary or convenient for family use, and land used for the purposes thereof. If situated in the country, it may include a garden or farm; if in a town or city, it may include one or more lots or blocks. It need not be compact in form and is not measured by fences merely. The only tests are use and value.

At common law, the term "dwelling house" includes the privy, barn, stable, cow house, dairy house, if they are parcel of the same messuage, although they are not under the same roof or joining contiguous to it. 1 Hale P. C. 558.

In determining the intention of a testator as to the meaning of the word "home place" used in his will, the court, in 69 Vt. 34, 37 A. 275, held that a devise of a life estate in "my home place where I now live" carried the house occupied by the testator and the enclosure about it including a woodshed, chicken yard and wagon entrance.

In the "horse-and-buggy" age, folks were largely dependent upon the horse for transportation and husbandry power, and. as shown by the aforementioned decisions, courts generally held that sheds and buildings necessary for the housing and protection of horses and equipment powered by them were necessary adjuncts to a home and, therefore, considered that such buildings, as part of the curtilage, were included in the general definition of the term "home."

It is common knowledge that in our country the automobile has supplanted the horse as an essential means of transportation. A large portion of American families are dependent upon automobiles for transportation and making a living. Millions of people live out of reach of any kind of public transportation. Civilian defense is built on the availability of quick motor conveyance for emergency evacuation. School children. doctors, nurses, public health officials and others depend upon automotive power for transportation. In 1950, with an approximate population of 150,000,000, the number of passenger automobiles registered in the United States totaled 40,315,000. It is interesting to note that only 12,712,000 automobiles were registered that year in all of the rest of the world. It has been estimated that, if all of the passenger automobiles in the United States were placed in a single line, bumper to bumper,

the procession would be some 125,000 miles long, or long enough to stretch across the country 40 times, or 20 round trips, or twice around the earth at the equator. A wag has suggested that the resulting traffic jam from such a procession really would be intolerable.

The automobile no longer is classified as a luxury, but as a basic necessity for most American families.

We conclude that a direction in a will permitting a beneficiary to occupy the testator's home without payment of rent for a stated period of time following the testator's death will permit that beneficiary to occupy, rent free, a garage located on the same lot as a dwelling, which had been used as a home by the testator, unless, by the terms of the will, the testator employed specific language indicating an intention to exclude the garage as part of the home.

The exceptions of E. H. Niesen, therefore, will be overruled.