This is a license revocation case.
In February 1988 the Alabama Insurance Department (Department) filed an administrative complaint against Howard Patrick Howell, an insurance agent licensed in this state. The complaint alleged, among other things, that Howell fraudulently misappropriated over $16,000 of policyholders' funds. The complaint was later amended to contain nine additional counts of alleged insurance violations based on acts committed by Howell after the complaint was filed. In November 1990 an administrative hearing was held on the complaint against Howell. After considering the detailed evidence presented, the administrative hearing officer entered an order finding Howell guilty of fraud and misappropriation of funds, and revoking his Alabama insurance license.
Howell subsequently appealed this judgment to the Circuit Court of Mobile County. Following an ore tenus proceeding, the circuit court entered an order overturning the hearing officer's decision and reinstating Howell's license. The Department appeals. We reverse.
We begin by noting that the judgment of the circuit court hearing an appeal from an administrative proceeding is afforded no presumption of correctness and that the court cannot substitute its own judgment for that of the administrative hearing officer as to the weight of the evidence or questions of fact. Dawson v. Alabama Department of EnvironmentalManagement, 529 So.2d 1012 (Ala.Civ.App.), cert. denied,529 So.2d 1015 (Ala. 1988). Because of the specialized competence of the administrative fact finder, his judgment can be overturned only when it is unsupported by the evidence, entered arbitrarily and capriciously, or obtained to the detriment of the defendant's substantial rights. Id.
The evidence presented at the administrative hearing reveals the following: Prior to the filing of the complaint against him, Howell was an insurance agent for Principal Mutual Life Insurance Company (Principal Mutual). Along with many other duties, Howell managed the life insurance policies of seven clients residing in Tennessee and Mississippi. To "service and update" their policies, Howell suggested to these seven policyholders that the cash values in their existing life insurance policies be transferred into new policies that would offer greater coverage for a reasonable premium, without incurring tax liability.
The seven clients consented to this "tax free exchange"; however, before transferring the cash values of their existing policies, Howell took out loans of $2,000 or less in the name of the insured on each policy and appropriated these amounts for his own use. As an agent for Principal Mutual, *Page 1055 
Howell was authorized to initiate these small loans at a local Principal Mutual office without the signature of the policyholders on loan application forms. The company would then issue drafts in the amount of the loan, payable to the insureds, and send them to Howell for delivery to the policyholders. Howell asked each policyholder to endorse the draft and give it back to him, presumably to be transferred into the new policies. With this process, Howell obtained some of the cash value of each existing policy, then transferred the reduced cash value into the new policies for the insureds. The cash value of preexisting policies was further reduced by built-in "loads," i.e., regular transaction costs and Howell's authorized commission, before being transferred into the new policies.
After these deductions were taken and the new coverage was secured for the seven insureds, Howell terminated their preexisting policies, and the small loans taken by Howell on these policies were "extinguished"; that is, records would not show that the cash value put into the new policies had been reduced by the loans taken on the old policies. Howell executed at least 15 separate loans in this manner and received proceeds in excess of $16,000.
An investigation of Howell's activities was triggered after it was discovered that the loan drafts issued to the seven insureds were actually being deposited into accounts controlled by Howell. When confronted by Principal Mutual, Howell disclosed his activities, including another loan transaction that had not yet been discovered by the company. Howell admitted that he obtained the signatures of the insureds on loans, then received the proceeds for himself. Based on these admissions, Howell's contract as an agent for Principal Mutual was terminated for cause, and a complaint was initiated against him with the Department.
After his termination from Principal Mutual, Howell submitted several applications to the Department for licensure with other insurance companies and sent copies of these applications to the prospective employers. On the original applications Howell swore that he had never been previously terminated for any reason other then for lack of production, and further swore that no complaints had ever been filed against him with the Department. After the prospective employer received copies of this application, Howell altered the application on file with the Department to disclose his termination from Principal Mutual and the subsequent complaint filed against him. He did not send an amended application to the prospective employers. The Department noted the obvious alterations on Howell's application and discovered that he had sent copies of only the original, false application to the prospective employers. Based on this discovery, the Department amended its complaint against Howell to add counts of fraud based on the falsities in his applications. The Department also moved to deny the applications, but allowed Howell to withdraw them before the denial could be issued against him.
Based on the foregoing facts, as well as other evidence presented at the hearing, the administrative hearing officer determined that Howell fraudulently collected unauthorized fees from his clients and misrepresented the effects of the "tax free exchange." The officer further determined that Howell had sworn falsely on his applications for employment with other companies.
On appeal the circuit court found that the Department did not have jurisdiction over the case because Howell's acts were not committed against Alabama citizens. The court also found that Howell had been denied due process because the administrative hearing process had taken two years, during which Howell had been unable to obtain licensure with other insurance companies. The court determined that the evidence presented did not demonstrate that Howell had acted dishonestly in his dealings with the seven insureds. The court also concluded that the Department could not find Howell guilty of fraud regarding the applications he submitted, because he withdrew them before the Department could rule upon them. *Page 1056 
On appeal to this court, the Department argues that its decision to revoke Howell's insurance license was amply supported by law and evidence and further argues that the decision was neither arbitrary nor violative of Howell's right to due process. In view of this, the Department concludes that the circuit court merely substituted its judgment for that of the administrative hearing officer and was therefore in error.
In order for an administrative agency to act with authority, its jurisdiction over the matter must first be affirmatively established. Barry v. Pike County Board of Education,448 So.2d 315 (Ala. 1984). Accordingly, we first review the circuit court's finding concerning the Department's jurisdiction over this case.
The Department is statutorily charged with the duty to protect the people of this state from those insurance agents who do not conduct their duties with the veracity necessary to the profession § 27-8-4(a), Code 1975. The Department is forbidden from allowing the licensure of agents who are not qualified, trustworthy, and competent, § 27-8-4(a)(2)-(a)(3), and may revoke the licenses of those agents who do not display these traits. Section 27-8-16.
In construing the limits of these statutory provisions, we are required to ascertain and effectuate the legislative intent, as expressed in the language used and the purpose sought to be obtained. Ex parte Holladay, 466 So.2d 956
(Ala. 1985). We are also mindful that statutes intended for public benefit must be construed in favor of the public.Hellums v. Reinhardt, 567 So.2d 274 (Ala. 1990).
Howell's attempts to gain licensure to work for other insurance companies were acts committed in this state and were made part of the complaint against him. These acts alone would have supported an action against Howell under § 27-8-16(a)(3). However, the legislature has placed absolutely no limitations upon the Department's scope of inquiry to assess the traits of an agent seeking to gain an Alabama license; thus, the Department is not prevented from examining the out-of-state actions of an agent to determine whether he is fit for licensure in Alabama. If restrictions upon the Department's jurisdiction are needed, the legislature must enact them; such changes cannot be made by this court. Ex parte Grubbs,571 So.2d 1119 (Ala. 1990).
We next address the circuit court's finding concerning due process in the administrative proceeding. In its order the court emphasized that Howell was unable to ply his trade as an insurance agent during the two years that the matter remained pending before the Commissioner before resolution at the administrative proceeding. From this, the court concluded that the Department had violated Howell's due process rights by waiting so long to hold a hearing on the allegations against him.
Section 27-8-17(a) provides that before an agent's state insurance license can be revoked, the agent must receive notice from the Commissioner of the impending revocation and may make a written demand for a hearing to determine the reasonableness of the Commissioner's action. Id. Upon such a written request, the Commissioner shall set a date for hearing "not less than 30 days from the date of receipt of the written demand," §27-8-17(a); however, there is no required time frame within which the hearing must be conducted.
The record shows that Howell received notice of the complaint against him in February 1988 and that he then filed an answer. Thereafter, the Department amended its complaint several times to add counts of fraud based on Howell's attempts to gain licensure for employment with other insurance companies. With each amendment Howell was given an additional 30 days to file an answer, thus prolonging the process of obtaining a hearing. Howell did not secure counsel for himself until August 1990. The hearing was scheduled and both parties filed for various continuances. Howell at first agreed to the taking of the insureds' deposition by telephone, but later withdrew his consent; this resulted in further delays because it was necessary for the attorneys to travel out of state and *Page 1057 
schedule individual depositions with each insured. After reviewing the chronology of this case, we are not convinced that the two-year pendency of the complaint resulted from anything more than the usual delays associated with fairly complex litigation. We also point out that Howell's license was not revoked while the complaint against him was pending; thus, he remained qualified for employment during that time. We therefore do not find that the delay in holding the hearing constituted a violation of Howell's right to due process.
We next address the issue of Howell's alleged fraud in attempting to gain licensure to work for other insurance companies after his termination from Principal Mutual.
In its order the circuit court found that the Department could not properly bring counts of fraud against Howell based on the false statements in his applications for this licensure, because the applications were withdrawn before they could be denied by the Department. We find no merit in this conclusion. By statute, the Department is authorized to revoke an agent's license for merely attempting to obtain a license by fraud or misrepresentation, § 27-8-16(a)(2), or for intentionally making a material misstatement in an application for such license, §27-8-16(a)(3). It is uncontroverted that Howell did misrepresent material facts in his initial application for licensure with several insurance companies. Moreover, there is evidence in the record to support the hearing officer's finding that these misrepresentations were intentional. Accordingly, the circuit court erred in reversing the administrative finding on this issue.
The final issue for our review is whether the evidence establishes any fraud or wrongdoing in Howell's dealings with the seven insureds.
At the administrative hearing and in the circuit court, Howell argued that the loan amounts he took from the insureds were "fees" in return for his services for them. Howell pointed out that he had spent many hours creating the new policies for the seven insureds, seeking to give them better coverage for a reasonable premium. Because the premiums on the new policies were fairly modest, Howell earned little in commission on his work; thus, he believed he was entitled to the amount he took through the loan transactions as a fee for his labors.
To bolster his argument, Howell introduced into evidence a "Statement of Understanding" signed by the insureds in which they consented to have the cash value of existing policies transferred to the new policies written by Howell. The document contained the following provisions:
 "The new policy, if issued, is to be paid with credits from an existing policy or policies and/or a single premium and/or recurring premiums.
 "Medical examinations, attending physician's statements, inspection reports, fees, commissions
and other costs shall be reflected in the values of the new policy and/or from credits, loans, surrenders and/or money paid by me." (Emphasis added.)
Howell also produced several letters that he sent to the insureds after he applied for the small loans on their various policies. These letters explained the "tax free exchange" of the old policies for the new and stated that the cash and loan values of their pre-existing policies would be transferred to a new, larger policy "[a]fter all expenses are extracted from the old policies." Howell argued that this language constituted full disclosure of the "fees" that would be taken from the cash value of the preexisting policies by his executing small loans on these policies.
In its order the circuit court found that Howell had not committed a fraud in executing the loans because there is no Alabama statute prohibiting the charging of fees by an insurance agent or requiring the disclosure of such fees. The court also noted that Howell's contract with Principal Mutual did not specifically prohibit the charging of fees. The court found that the seven insureds had reaped a benefit from Howell's activities because they obtained greater insurance coverage and that this *Page 1058 
benefit mitigated any lack of disclosure regarding Howell's unilateral "fees."
We recognize that Alabama insurance laws do not prohibit the charging of fees by insurance agents; however, agents are prohibited from willfully collecting an insurance charge or premium in excess of that fixed by the insurer, § 27-12-17(b), and from otherwise engaging in dishonest or fraudulent practices, § 27-8-16(a)(6). In transacting business for the seven insureds, Howell was not working as an independent businessman but as an agent of Principal Mutual, a company which did not authorize his imposition of fees on the clients. Officials for the company testified at trial that only certain types of agents could charge fees and could do so only through clearly defined procedures. Howell himself testified that he had specifically rejected the company's offer to allow him to become this type of agent, because he did not want to share a portion of the fees with Principal Mutual. Instead, he decided to utilize Principal Mutual's system of granting loans to obtain amounts in excess of the premiums fixed by the company. When the loan transactions were discovered, Principal Mutual was obliged to repay the amounts taken by Howell.
Although his contract with the company strictly prohibits employees from drawing up contracts in the name of Principal Mutual, Howell created a "Statement of Understanding" that attempted to contractually bind the seven insureds to payment of his unapproved fees in return for greater coverage through Principal Mutual. The document was not an official Principal Mutual agreement. It did not disclose that Howell would take out loans in the name of the insureds to pay himself; rather, it merely stated that various "costs" and "fees" would be "reflected" in such loans.
Although the insureds signed the "Statement of Understanding," the evidence clearly shows that they did not intend to authorize any loans for Howell's own profit on the existing policies; rather, they believed that the full cash value of their existing policies, including the loan drafts, were being transferred into new policies. Testimony from several of the insureds shows that Howell told them the loan proceeds would go into the new policies and that the loans were a "paper transaction" necessary to secure greater coverage without tax liability or extremely high premiums.
The circuit court found that Howell had actually obtained better coverage for the insureds, and thus reasoned that the means had justified the ends. We do not agree. The fact that Howell arranged better coverage for the insureds is irrelevant; the Department did not revoke his license because he wrote these policies or even because he wanted fees for his work, but rather because it determined that Howell had displayed a lack of honesty in his dealings with both his employer and clients. The testimony from Principal Mutual officials, from the insureds, and from Howell himself amply supports this determination.
Upon our careful examination of the record, as well as the applicable statutes, we conclude that the judgment of the administrative hearing officer in this matter was reinforced by facts and the law and was not rendered in violation of Howell's substantive rights. The circuit court was empowered only to review the decision for palpable error; it was not at liberty to replace its judgment for that of the officer's, particularly in light of the officer's specialized competence in the field of insurance. Dawson, 529 So.2d 1012. Accordingly, we must conclude that the circuit court erred in its reversal of the administrative hearing officer's decision. The circuit court's judgment is hereby reversed and remanded to allow the circuit court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur. *Page 1059