On Application for Rehearing
This court's opinion of May 16, 1997, is withdrawn, and the following is substituted therefor.
The State of Alabama Home Builders Licensure Board ("the Board") and its Recovery Fund ("the Fund") appeal from a judgment directing the Fund to pay Wendell Sowell and Elizabeth Sowell ("the Sowells") the sum of $25,000, the amount of an uncollected judgment entered in favor of the Sowells against Wayne Parker, individually, and Wayne Parker d/b/a Parker Construction (collectively "Parker"). We affirm.
The Sowells initiated this civil action by filing a two-count complaint in the Cullman County Circuit Court, naming Parker as a defendant. The Sowells alleged that Parker had entered into a contract to remodel their home and to construct a detached garage, but that Parker had negligently failed to perform the contract in a workmanlike manner and had thereby breached the contract. *Page 216 
After Parker answered the complaint, the parties filed a "Joint Motion for Consent Judgment," indicating their consent to the entry of a judgment in favor of the Sowells for compensatory damages of $25,000 "on account of the gross negligence of [Parker] in the practice of residential home building." The trial court granted this motion and entered a judgment in favor of the Sowells for $25,000.
The Sowells then filed a verified claim in the trial court pursuant to § 34-14A-15, Ala. Code 1975, for payment of the $25,000 judgment from the Fund. The Sowells alleged that the Board had been given notice of the underlying action by certified mail upon the filing of complaint; that they had collected nothing from Parker; and that their judgment qualified for payment from the Fund. The Board moved to dismiss the verified claim, contending, among other things that "[t]he construction activity, which is the subject matter of this case . . . is exempt from the home builders licensure law, [Ala. Code 1975, § 34-14A-1 et seq.]," and that the home builders licensure law does not apply to "mobile homes."
The trial court then entered a judgment directing the Fund to pay the Sowells' uncollected judgment of $25,000. The trial court noted that the attorneys had submitted the case on stipulated facts, and it set forth pertinent portions of the stipulated facts in its findings. The trial court's judgment stated, in pertinent part:
 "3. The Board asserts two legal defenses to the [Sowells' claim]. The first assertion is this claim is exempt at law under [§ 34-14A-6, Ala. Code 1975,] in that some of the work was performed on the [Sowells'] 'mobile home.' The parties stipulated the [Sowells] own the property in question which consists of a 'mobile home,' that said home is the primary residence of the [Sowells] and some of the work included placing a permanent pitched roof on the mobile home.' The 'mobile home' is permanently affixed on concrete block foundation. The Court finds as a matter of law the asserted exemption does not apply to the facts in this case in that [Parker] did not manufacture the 'mobile home' and none of the claims result from the manufacture of the 'mobile home' but rather from [Parker's] grossly negligent workmanship in building the new roof.
 "4. The second asserted defense is that the Fund is not liable because the garage [Parker] was to build was detached from the home and therefore not a part of the home. The parties stipulate the garage is immediately adjacent to the home and intended for normal use as a garage by the occupants of said home, namely the [Sowells]. The Court finds as a matter of law the garage, while not apparently physically tied to the home, is in fact an integral part of the [Sowell's] home and therefor[e] a structure covered under the Fund."
We note that this appeal is taken from a judgment entered upon stipulated facts; as a result, our review is de novo.
"Where the evidence is stipulated, and no testimony is presented orally to the trial court, this Court reviews the evidence without any presumption of correctness, i.e., without any presumption in favor of the trial court's findings. In such a situation, this Court sits in judgment on the evidence."Landmark Chevrolet, Inc. v. Central Bank of the South,611 So.2d 1043, 1044-45 (Ala. 1992) (quoting Sevigny v. New SouthFederal Sav. Loan Ass'n, 586 So.2d 884, 886 (Ala. 1991)).
The Board and the Fund derive their existence from Act Number 92-608, Ala. Acts 1992; this Act has been codified as Chapter 14A of Title 34 of the Code of Alabama 1975 (§ 34-14A-1 et seq.).[1] Section 34-14A-1 sets forth the intent of the Legislature:
 "In the interest of the public health, safety, welfare, and consumer protection and to regulate the home building and private dwelling construction industry, the purpose of this chapter, and the intent of the legislature in passing it, is to provide for the licensure of those persons who *Page 217 
engage in home building and private dwelling construction, including remodeling, and to provide home building standards in the State of Alabama. The legislature recognizes that the home building and home improvement construction industries are significant industries. Home builders may pose significant harm to the public when unqualified, incompetent, or dishonest home building contractors and remodelers provide inadequate, unsafe or inferior building services. The legislature finds it necessary to regulate the residential home building and remodeling construction industries."
The Act established the Board as a body of nine members with the express authority to license residential home builders, to revoke licenses, and to "promulgate rules and regulations necessary to effectuate the [purposes of the Act] and to accomplish its work." Ala. Code 1975, §§ 34-14A-3, 34-14A-5,34-14A-8, and 34-14A-11.
In addition to creating the Board, the Act authorized the Board "to establish a recovery fund from which an aggrieved party may recover actual or compensatory damages . . . sustained within the State of Alabama as the result of conduct of a licensee in violation of [the Act] or the rules and regulations of the [Board]." Ala. Code 1975, § 34-14A-15. Payments from such a fund are subject to a limit of $50,000 applicable to each transaction, licensee, and claimant. Id.
Pursuant to this authority, the Board established the Fund from which the Sowells sought relief in this case. Also, the Board has employed its rulemaking power to define the term "violation of the act" as including instances wherein one of its licensees "is guilty of gross negligence, incompetence, or misconduct in the practice of residential home building." See Ala. Admin. Code r. 465-x-1-.01(8)(a)2.
On appeal, as in the trial court, the Board and the Fund argue that the Sowells' contract with Parker was not subject to the Act, and that the Sowells' unpaid judgment is thus not payable by the Fund. Specifically, the Board and the Fund claim (1) that the Sowells' home is a "mobile home" and is therefore specifically excluded from the operation of the Act in all respects; and (2) that because part of the work contemplated by the Sowells' contract with Parker was to include construction of a garage physically separated from the Sowells' home, and because the remaining portion of the work was priced at less than $10,000, Parker was not subject to the Act with respect to his work for the Sowells. We address these arguments in turn.
Section 34-14A-5, Ala. Code 1975, provides, in pertinent part, that "[a]ll residential home builders shall be required to be licensed by the . . . Board annually" (emphasis added). The Act defines the term "residential home builder" as follows:
 "One . . . who, for a fixed price, commission, fee, or wage, undertakes or offers to undertake the construction or superintending of the construction, of any building or structure which is not over three floors in height and which does not have more than four units in an apartment complex, or the repair, improvement, or reimprovement thereof, to be used by another as a residence when the cost of the undertaking exceeds $10,000.00."
Ala. Code 1975, § 34-14A-2(1) (emphasis added). The Act defines the term "structure" as "[a] residence, including . . . amanufactured home placed on a permanent foundation." Ala. Code 1975, § 34-14A-2(6) (emphasis added).[2] However, the Act also states that it "does not apply to mobile homes," and that it "shall not in any way change or interfere with the duties, responsibilities, and operations of the Alabama Manufactured Housing Commission." Ala. Code 1975, § 34-14A-6(6).
Sections 34-14A-2(6) and 34-14A-6(6) are portions of Code sections that are derived from the same Act of the legislature. Our interpretation of these statutes is governed by settled legal principles. "Sections of the Code originally constituting a single act must be read in pari materia in order to produce *Page 218 
a harmonious whole." Ex parte Jackson, 625 So.2d 425, 428
(Ala. 1992) (internal quotation marks omitted). Such sections "should be construed together to ascertain the meaning and intent of each," and "should be resolved in favor of each other to form one harmonious plan and give uniformity to the law."League of Women Voters v. Renfro, 292 Ala. 128, 131,290 So.2d 167, 169 (1974). Finally, we recognize that a statute should be construed, if possible, to give effect to every section thereof, and that the legislature should not be deemed to have done a vain and useless thing. McCausland v. Tide-MayflowerMoving Storage, 499 So.2d 1378, 1382 (Ala. 1986); Alidor v.Mobile County Comm'n, 291 Ala. 552, 558, 284 So.2d 257, 261
(1973).
Construing §§ 34-14A-2(6) and 34-14A-6(6) together, we conclude that the intent of the Legislature was to exempt from the Board's jurisdiction those persons performing construction, fabrication, or renovation work on manufactured homes or mobile homes that have not been placed upon a permanent foundation. Conversely, the Legislature's inclusion of "manufactured home[s] placed on a permanent foundation" within the definition of "structure" reveals an intent to regulate those who work upon mobile homes or manufactured homes permanently affixed to a parcel of realty. Thus, there is no conflict between §§34-14A-2(6) and 34-14A-6(6) when they are construed together, as our canons of statutory construction require.
This court cannot adopt the Board and the Fund's interpretation of the Act as excluding all mobile homes regardless of circumstances, for to do so would be the equivalent of holding that the Legislature's inclusion of certain manufactured homes within the Act's definition of "structure" was meaningless, a vain and useless thing. Similarly, although we acknowledge the maxim, cited by the Board and the Fund, that "where two sections or provisions of an act are conflicting, the last in order of arrangement controls" (Swint v. Alabama Alcoholic Beverage Control Bd.,628 So.2d 769, 772 (Ala.Civ.App. 1993) (internal quotations omitted)), we find no conflict between the two pertinent provisions of the Act upon which this principle may apply. In light of the trial court's unchallenged finding, based upon stipulated facts, that the Sowells' mobile home is placed upon a permanent foundation of concrete blocks, we agree with the trial court that § 34-14A-6(6) "does not apply to the facts in this case."
On rehearing, the Board and the Fund note that the Legislature has recently amended § 34-14A-2(6) as originally codified by renumbering it as subsection (10) of § 34-14A-2 and by deleting the words "a manufactured home placed on a permanent foundation" from the definition of "structure." See
Ala. Acts 1997, Act No. 97-250, § 3. They contend that this amendment indicates that the legislature "has clarified that it did not intend any mobile or manufactured home, whether or not placed on a permanent foundation, to be covered under the home builders licensure law." In essence, the Board and the Fund are requesting that this court apply the new definition of "structure" in Act No. 97-250 retroactively so as to divest the Sowells of the judgment in their favor.
We must reject the Board and the Fund's request. In Ex parteBonner, 676 So.2d 925 (Ala. 1995), our supreme court set forth the following applicable principles governing the retroactive application of statutes on appeal:
 "To be sure, this Court has often noted that retrospective application of a statute is generally not favored, absent an express statutory provision or clear legislative intent that the enactment apply retroactively as well as prospectively. . . . This general rule is, however, subject to an equally well-established exception, namely, that remedial statutes . . . are not within the legal [concept] of retrospective laws, . . . and do operate retroactively, in the absence of language clearly showing a contrary intention. . . . In other words, remedial statutes — those which do not create, enlarge, diminish, or destroy vested rights — are favored by the courts, and their retrospective operation is not obnoxious to the spirit and policy of the law. . . . Remedial statutes are exemplified by those that impair no contract or vested right . . . but preserve and enforce the right and heal defects *Page 219 
in existing laws prescribing remedies. . . . Such a statute may be applied on appeal, even if the effective date of that statute occurred while the appeal was pending, and even if the effective date of the statute was after the judgment in the trial court."
676 So.2d at 926-27 (internal quotations omitted).
There is no language in Act No. 97-250 that indicates that it "interprets" or "clarifies" the provisions it amends, nor any provision revealing a legislative intent that it be applied retroactively to pending actions; instead, it merely provides that it "shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming law." Nor do we conclude that Act No. 97-250 is "remedial" in operation, for it divests those persons who possess manufactured homes placed on permanent foundations of any protection from the Board, and thus abrogates their rights to be made whole by the Fund. Just as the Act unambiguouslyincluded parties such as the Sowells within its protective umbrella by express definitional language, Act No. 97-250 willexclude such parties from future protection by the Board and the Fund because it repeals the same express definition, thereby defeating the right of action against the Fund that such parties had under the Act as originally codified. Thus, because Act No. 97-250 contains no express language mandating retroactive application, and because it is not a remedial statute under Bonner, we conclude that the legislature did not intend that it be applied retroactively, and we decline the Board and the Fund's invitation to do so.[3]
The Board and the Fund also argue that the trial court erred in concluding that a detached garage may qualify as a part of a "residence" under the Act. They contend that one-half of the $13,764 sum that the Sowells agreed to pay to Parker represents payment for work on the Sowells' garage, which, the parties stipulated, was to be physically separated from the Sowells' home, and that Parker's work for the Sowells therefore did not reach the $10,000 threshold contained in the definition of "residential home builder" under § 34-14A-2(1).
As we have noted, the Act's definition of "residential home builder" includes persons who "undertake the construction . . . of any building or structure . . . to be used by another as a residence." Ala. Code 1975, § 34-14A-2(1) (emphasis added). Moreover, the term "structure" is defined in the Act as "[a] residence." Id. § 34-14A-2(7). Unfortunately, the term "residence" is not itself defined in the Act. Accordingly, we must determine the proper construction of the word "residence" as it is used in the Act by reference to general principles of statutory construction.
Ala. Code 1975, § 34-14A-1 leaves no doubt that the Act was passed to further "the interest of the public health, safety, welfare, and consumer protection," and to prevent the potential "significant harm to the public" from unqualified, incompetent, or dishonest home building contractors. In this regard, it parallels the statutes mandating the licensure of general building contractors, which statutes, as our supreme court stated in Cooper v. Johnston, 283 Ala. 565, 567, 219 So.2d 392,394 (1969), were primarily enacted "to protect the public against incompetent contractors." Because the Act was intended for the benefit of the public, our caselaw requires that it be construed most favorably to the public. See State Ins. Dep't v.Howell, 614 So.2d 1053, 1056 (Ala.Civ.App. 1992); EmployersIns. Co. v. Johnston, 238 Ala. 26, 32, 189 So. 58, 63 (1939).
"The word 'residence' means 'a building used as a home.' "Waites v. Toran, 411 So.2d 127, 129 (Ala. 1982) (quotingWebster's Third New Int'l Dictionary, "Residence," at 1931 (1971)). However, under a number of authorities, "[t]he word is not confined merely to the dwelling house, but it may include *Page 220 
everything used to make the home more comfortable and enjoyable." 77 C.J.S. Residence, at 293 (1952) (citing Linn v.Ziegler, 68 Kan. 528, 531, 75 P. 489, 490 (1904) (construing homestead exemption statute)); accord, State v. Gardella,156 Ariz. 340, 342, 751 P.2d 1000, 1001 (Ct.App. 1988) (construing residential burglary statute); see also Thomas v. Zoning Bd. ofAdjustment, 241 S.W.2d 955, 959 (Tex.Civ.App. 1951) (holding that swimming pool contributed to use of home; quoting Ashtonv. Ingle, 20 Kan. 670, 681 (1878)); cf. In re Estate ofSandersfeld, 187 Cal.App.2d 14, 17, 9 Cal.Rptr. 447, 449-50
(1960) (house described as a person's "home" in a will includes not only structure and the land upon which it is situated, but also any garage or outbuildings which make up a residence); Inre Niesen's Estate, 46 Ohio Op. 164, 166-67, 103 N.E.2d 24, 27 (Hamilton Co. Prob. Ct. 1951) (holding that "home" includes adjacent garage, and noting that at common law "dwelling house" included the privy, barn, stable, cow house, and dairy house, if they are part of the same parcel, although they are not under the same roof or contiguous to it). Clearly, then, the term "residence" is not necessarily limited to a dwelling where one's bedroom and living room are located, but may include anything facilitating the enjoyment of the principal dwelling.
In the absence of any contrary indication of a more narrow legislative intent, and in light of our duty to construe the Act most favorably to the public,[4] we conclude that construction of a garage immediately adjacent to a private dwelling house falls within the jurisdiction of the Board under the Act. As the Niesen's Estate court noted almost fifty years ago, "[a] large portion of American families are dependent upon automobiles for transportation and making a living" and "[t]he automobile no longer is classified as a luxury, but as a basic necessity for most American families." 46 Ohio Op. at 166, 167, 103 N.E.2d at 27. A garage, whether attached to or adjacent to one's home, is certainly within that class of items that are "used to make the home more comfortable and enjoyable," not to mention affordable, for thousands of Alabamians. We are reluctant to hold that our Legislature would exclude from the reach of the Act contractors who construct garages that happen not to be physically attached to a home without signaling a clear intent to exclude those members of the public who deal with those contractors from the beneficent effects of the Act. Thus, in light of the parties' stipulations that the Sowells' garage is immediately adjacent to the home and that it is intended for normal use as a garage by the Sowells, we agree with the trial court that the garage contemplated under the Sowells' contract with Parker would necessarily be "an integral part of [their] home" and within the scope of the Act.
Based upon the foregoing facts and analysis, we conclude that the judgment in favor of the Sowells is correct. We therefore affirm the judgment of the trial court.
ORIGINAL OPINION OF MAY 16, 1997, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] On application for rehearing, the Board and the Fund note that several codified sections of the Act were recently amended by the legislature. See Ala. Acts 1997, Act No. 97-250, § 3. However, as we note later in this opinion, these amendments have no bearing upon the outcome of this appeal.
[2] This inclusive definition was repealed in 1997, after the entry of the judgment now on appeal. See note 1, above.
[3] Because we conclude that the legislature did not intend
retrospective application of Act No. 97-250 to owners of manufactured homes whose homes are on permanent foundations, we do not reach the question of the constitutionality of such an application of Act No. 97-250 so as to abrogate the Sowells' cause of action after they had commenced their action. See Ala. Const. 1901, § 95.
[4] We note that our supreme court recently construed the term "dwelling" in a restrictive covenant upon real property so as to exclude a carport (see Carpenter v. Davis, 688 So.2d 256,258 (Ala. 1997)). However, unlike the Carpenter court, we are constrained to interpret the term "residence" § 34-14A-2(1) in favor of the So-wells, who are members of the very public whom the Legislature sought to protect in the Act.