THOMPSON, Presiding Judge.
Terry Hutchenson appeals from the Lauderdale Circuit Court’s partial summary judgment in favor of Joseph C. Daniel. For the reasons stated herein, we reverse the trial court’s judgment and remand the cause for further proceedings.
This case arises from certain repair work that Hutchenson performed for Daniel on a patio and retaining wall located at Daniel’s home. The statutes relevant to the present appeal are located in Chapter 14A of Title 34, Ala.Code 1975, which “deals with the licensing of individuals and companies engaged in the profession of residential home construction.” Fausnight v. Perkins, 994 So.2d 912, 916 (Ala.2008). The purpose of the chapter is described in § 34-14A-1, which provides:
“In the interest of the public health, safety, welfare, and consumer protection and to regulate the home building and private dwelling construction industry, the purpose of this chapter, and the intent of the Legislature in passing it, is to provide for the licensure of those persons who engage in home building and private dwelling construction, including remodeling, and to provide home building standards in the State of Alabama. The Legislature recognizes that the home building and home improvement construction industries are significant industries. Home builders may pose significant harm to the public when unqualified, incompetent, or dishonest home building contractors and remode-lers provide inadequate, unsafe or inferi- or building services. The Legislature finds it necessary to regulate the residential home building and remodeling construction industries.”
*911 Section 34-14A-5 requires “residential home builders” to obtain a license from the Alabama Home Builders Licensure Board (“the Board”). Section 34-14A-2(10) defines a “residential home builder,” in pertinent part, as
“[o]ne ... who, for a fixed price, commission, fee, or wage, undertakes or offers to undertake the construction or superintending of the construction ... of any residence ... which is not over three floors in height ..., or the repair, improvement, or reimprovement thereof, to be used by another as a residence when the cost of the undertaking exceeds ten thousand dollars ($10,000).”
Section 34-14A-2(9) defines a “residence” as “[a] single unit providing complete independent residential living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking, and sanitation.” Section 34-14A-14 provides, in pertinent part, that an unlicensed residential home builder “shall not bring or maintain any action to enforce the provisions of any contract for residential home building which he or she entered into in violation of this chapter.”
We turn now to the factual and procedural history of the present appeal. The record, considered in light of the standard by which this court reviews a summary judgment, see infra, reflects the following. In June or July 2007, Hutchenson, a stonemason, and Daniel, the homeowner, entered into a contract whereby Hutchenson agreed to renovate and repair a flagstone patio, a retaining wall, and a walkway at Daniel’s home for an estimated cost of $45,000. While Hutchenson performed the work for Daniel, the cost of the project increased to $75,000 because of certain unanticipated conditions and because Daniel made several changes to the work called for in the contract. Before each change, Hutchenson discussed the proposed change with Daniel and allowed Daniel to make a decision whether to proceed with that change. In an affidavit, Hutchenson described the arrangement of the patio and the retaining wall, as well as the work he performed on those structures, as follows:
“The back of the Daniel’s residence where the retaining wall and flagstone patio are located faces generally south.
“The east part of the retaining wall, which I worked on, steps down east-wardly to the ground and does not touch the residence.
“The west part of the retaining wall which I worked on, ends at the top of flagstone steps that lead in a southerly direction to the ground and does not touch the house. From the flagstone steps on the west part of the wall, the wall extends and circles back to the north and abuts the residence. My original agreement with Mr. Daniel did not cover any work covering this extension of the west wall.
“During the progress of the work, [Daniel] requested me, as an add on to the original agreement, to chisel out certain concrete on the top of the extension wall and to replace the concrete with a limestone cap, which I agreed to do, and did perform. This limestone cap is the only work that I did on the extension wall and the limestone cap which I placed on top of the wall, abutted the residence but is not in any way attached to the residence.
“The flagstone patio is located between the retaining wall, including the extension wall to the west, as described above. The flagstone patio sits on a concrete foundation which abuts the residence but is not a part of the residence or the foundation of the residence. The eave of the residence hangs over the *912 patio about 3 or 5 feet and about 8 to 10 feet in height from the base of the patio.
“As a part of my agreement with [Daniel], I chiseled up all the existing flagstones, replaced some parts of the concrete foundation, cleaned the flagstones and then replaced them in the concrete foundation of the patio.”
On July 1, 2008, Hutchenson sued Daniel alleging breach of contract. In his complaint, he alleged that he had completed the work called for in the contract but that Daniel still owed him $18,987.75, which Daniel had refused to pay. On August 22, 2008, Daniel filed an answer denying the material allegations of Hutchen-son’s complaint.[1] On the same day, Daniel filed a motion for a partial summary judgment in which he argued that Hutchenson was a “residential home builder” as that term is defined in § 34-14A-2 and that, as a result, Hutchenson was required, pursuant to § 34-14A-5, to have been licensed by the Board. Because Hutchenson did not have such a license, Daniel argued, Hutchenson was barred under § 34-14A-14 from enforcing the parties’ contract. Daniel attached to his motion an affidavit in which he stated, among other things, that the patio and the retaining wall were an “integral part” of the structure of his house and that they were “permanently attached and integrated into the structural components of the house.”
In his opposition to Daniel’s summary-judgment motion, Hutchenson contended that the patio, the retaining wall, and the walkway were not part of Daniel’s residence, as the term “residence” is defined in § 34-14A-2. In support of his opposition, Hutchenson submitted an affidavit, parts of which are quoted above. In that affidavit Hutchenson stated, among other things, that the patio and part of the retaining wall abutted Daniel’s house but were not attached to it. He also stated that the patio rested on a foundation that was separate from the foundation on which Daniel’s house rested. Hutchenson also filed a copy of an advisory opinion he had obtained from the Board, the state agency charged with administering the provisions of Chapter 14A of Title 34, Ala. Code 1975, regarding the dispute. In that advisory opinion, the Board, after reciting the facts provided to it by Hutchenson and the relevant statutes, wrote that the relevant statutes did not require Hutchenson to have obtained a license from the Board before entering into the contract with Daniel:
“Based on the narrow question you presented for the Board’s consideration, and the narrow set of circumstances described in this advisory opinion, the Board finds that the construction activity you have described in your request, alone, does not require that a contractor have a home builder’s license, regardless of the amount of the contract. Neither the wall, the patio, the walkway, nor the sidewalk is a ‘residence’ or a ‘structure’ as defined in Ala.Code (1975) § 34-14A-2. The construction of a retaining wall, patio, walkway, or sidewalk and the installation of flagstone or split face blocks thereon, is typically considered ‘subcontracting’ or a specialty function activity within the industry. A specialty function activity is able to be performed by a contractor alone and does not require the hiring of subcontraetor(s) to perform any work.
*913 “This advisory opinion is limited to those instances where the construction of a retaining wall, patio, walkway, or sidewalk and the installation of flagstone or split face blocks thereon do not affect the structural integrity of the residence and where no subcontractor(s) are hired to perform work outside the specialty function trade. This advisory opinion does not apply to those instances where the construction of a retaining wall, patio, walkway, or sidefwalk] and the installation of flagstone or split face blocks thereon affects the structural integrity of the residence, or where other subcontractor(s) are hired to perform work outside the specialty function activity.”
Daniel filed a motion to strike the Board’s advisory opinion because, according to him, it did not comply with Rule 56(e), Ala. R. Civ. P., and it contained hearsay. The trial court did not rule on that motion.
Hutehenson also filed the affidavit of an architect who stated that he had reviewed photographs of the patio and retaining wall that Daniel had submitted in support of his summary-judgment motion. Although the architect did not offer direct testimony related to Daniel’s house, he stated that he had “never designed, seen or known of a patio that is permanently attached to a house.” The architect also stated:
“Due to the fact that the wall of the house is on a different foundation than the patio, and the patio, which is located outside of the house, is subject to expansion and contraction due to changing outdoor temperatures, good architectural practice is to put an expansion joint of approximately ½" wide and 4" high between the house and the patio. Such a patio does not in any way support the house and is not an integral part of the home. The house can exist without the patio and the patio can exist without the home.”
On January 16, 2009, the trial court entered an order granting Daniel’s motion for a partial summary judgment. In its order, the trial court found “that the patio and retaining wall to which [Hutehenson] made repairs were a part of [Daniel]’s residence and that, as such, the repairs and renovations undertaken by [Hutehen-son] constituted repairs, improvement, or reimprovement of the residence.” Because it was undisputed that Hutehenson did not hold a license issued by the Board, the trial court concluded that Hutehenson lacked standing to pursue his breach-of-contract action against Daniel. Hutehen-son filed a motion to alter, amend, or vacate the trial court’s partial summary judgment, which the trial court denied. Hutehenson filed an appeal to this court. This court transferred his appeal to the supreme court for lack of appellate jurisdiction, and that court deflected the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.[2]
“The standard by which we review a summary judgment is well settled:
*914 “ ‘We review [a summary judgment] de novo, applying the oft-stated principles governing appellate review of a trial court’s grant or denial of a summary-judgment motion:
“ ‘ “We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.” ’
“American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala.2002) (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000)).”
Saad v. Saad, 31 So.3d 706, 712 (Ala.Civ.App.2009).
It is undisputed that the Board has never issued Hutchenson a license to engage in home building, and, as a result, his breach-of-contract action against Daniel is precluded if he is a “residential home builder.” § 34-14A-14, Ala.Code 1975. Because the contract price for the work Hutchenson was to perform for Daniel exceeded $10,000, the question whether Hutchenson is a residential home builder turns on whether the repair work that he performed to the patio, the retaining wall, and the walkway at Daniel’s residence constituted “the repair, improvement, or reim-provement” of a “residence.” § 34-14A-2, Ala.Code 1975
Hutchenson contends that the patio and retaining wall on which he performed work are not physically attached to Daniel’s house and, as a result, are not part of the “single unit” comprising Daniel’s residence. He argues that, although the patio and the retaining wall abut the back of Daniel’s house, they are not attached to the house. He argues that the house does not rely on the patio or the retaining wall for support and that the house and the patio exist independently of one another. Hutchenson also quotes the Board’s advisory opinion pertaining to the present case and argues that this court should give great weight and deference to the Board’s opinion.
The Board, as amicus curiae, filed an appellate brief in support of Hutchenson’s appeal. It argues, among other things, that the patio and the retaining wall are not part of the residence because they are not attached to the house. The Board writes:
“The Board has consistently taken the position that when the object of the construction does not meet the definition of a residence, when the work to be performed consists of one function only and does not require the hiring of any additional subcontractors, or when the structural integrity of the residence is not affected by the work to be performed, the tradesman or specialty function contractor is not required to hold a home builders license as the work is outside the jurisdiction of the Board.”
Citing this court’s decision in Alabama Department of Revenue v. Jim Beam Brands Co., 11 So.3d 858 (Ala.Civ.App.2008), the Board argues that, “[i]n constru *915 ing the meaning of a statute, interpretations of the statute by the administrative agency charged with the enforcement of said statute are to weigh heavily with the court.”
In State Home Builders Licensure Board v. Sowell, 699 So.2d 214 (Ala.Civ.App.1997), this court defined the term “residence” broadly in concluding that a garage, even though it was detached from a house, was part of the “residence” for purposes of Chapter 14A of Title 34. Importantly, at that time, Chapter 14A of Title 34 did not contain a definition of the term “residence,” and, as a result, this court was required to supply a definition of that term in disposing of the appeal. In so doing, this court wrote:
“As we have noted, the Act’s definition of ‘residential home builder’ includes persons who ‘undertake the construction ... of any building or structure ... to be used by another as a residence.’ Ala.Code 1975, § 34-14A-2(1) (emphasis added). Moreover, the term ‘structure’ is defined in the Act as ‘[a] residence.’ Id. § 34-14A-2(7). Unfortunately, the term ‘residence’ is not itself defined in the Act. Accordingly, we must determine the proper construction of the word ‘residence’ as it is used in the Act by reference to general principles of statutory construction.
[[Image here]]
“ ‘The word “residence” means “a building used as a home.” ’ Waites v. Toran, 411 So.2d 127, 129 (Ala.1982) (quoting Webster’s Third New Int’l Dictionary, ‘Residence,’ at 1931 (1971)). However, under a number of authorities, ‘[t]he word is not confined merely to the dwelling house, but it may include everything used to make the home more comfortable and enjoyable.’ 77 C.J.S. Residence, at 293 (1952) (citing Linn v. Ziegler, 68 Kan. 528, 531, 75 P. 489, 490 (1904) (construing homestead exemption statute)); accord, State v. Gardella, 156 Ariz. 340, 342, 751 P.2d 1000, 1001 (Ct.App.1988) (construing residential burglary statute); see also Thomas v. Zoning Bd. of Adjustment, 241 S.W.2d 955, 959 (Tex.Civ.App.1951) (holding that swimming pool contributed to use of home; quoting Ashton v. Ingle, 20 Kan. 670, 681 (1878)); cf. In re Estate of Sandersfeld, 187 Cal.App.2d 14, 17, 9 Cal.Rptr. 447, 449-50 (1960) (house described as a person’s ‘home’ in a will includes not only structure and the land upon which it is situated, but also any garage or outbuildings which make up a residence); In re Niesen’s Estate, 46 Ohio Op. 164, 166-67, 103 N.E.2d 24, 27 (Hamilton Co. Prob. Ct.1951) (holding that ‘home’ includes adjacent garage, and noting that at common law ‘dwelling house’ included the privy, barn, stable, cow house, and dairy house, if they are part of the same parcel, although they are not under the same roof or contiguous to it). Clearly, then, the term ‘residence’ is not necessarily limited to a dwelling where one’s bedroom and living room are located, but may include anything facilitating the enjoyment of the principal dwelling.”
699 So.2d at 219-20.
The legislature remedied the lack of a statutory definition of “residence” when, in 2002, it amended § 34-14A-2 to provide a definition of “residence.” See Act No. 2002-72, Ala. Acts 2002. Clearly intending to preclude the application of the term “residence” to buildings and structures unattached to a house, the legislature, as stated above, defined a residence as “[a] single unit providing complete independent residential living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking, *916 and sanitation.” Id. at § 1 (codified as § 34-14A-2(9), Ala.Code 1975) (emphasis added). Thus, this court’s holding in So-well, applying the term “residence” to an unattached garage, was legislatively overruled by Act No. 2002-72.
The evidence presented to the trial court regarding Daniel’s summary-judgment motion was conflicting on the question whether the patio and the retaining wall were attached to Daniel’s house or merely abutted it. Daniel’s evidence indicated that the patio and the retaining wall were “permanently attached” to the house. In his affidavit, however, Hutchenson testified that the patio rested on a foundation that was separate from the foundation on which the house rested and that, although the retaining wall and the patio abutted the back of the house, they were not attached to the back of the house. We conclude that, if a jury were to credit Hutchenson’s testimony rather than Daniel’s evidence with regard to the question whether the patio and the retaining wall were attached to the house, the patio and the retaining wall would not be part of the “single unit” comprising Daniel’s residence; that Hutchenson’s repair work would not have been conducted on a residence; and, as a result, that Hutchenson would not have been required, in order to enforce his contract with Daniel, to have obtained a license from the Board. As a result, the trial court erred when it entered a partial summary judgment in favor of Daniel.
The result we reach is not altered by a consideration of this court’s opinion in Hollinger v. Wells, 3 So.3d 216 (Ala.Civ.App.2008), on which Daniel relies. As pointed out by Daniel, this court held in Hollinger that repairs to a back porch constituted repairs to a residence. 3 So.3d at 220. However, there is no indication in the Hol-linger opinion that the builder in Hollinger argued that the back porch was not part of the residence because it was not attached to the residence, nor, for that matter, is there any indication that the back porch was not, in fact, attached to the residence. Therefore, it does not appear that this court addressed in Hollinger a question similar to the one presented in the present case, i.e., whether a patio and retaining wall abutting but not attached to a residence constitute part of the single unit comprising the residence.
Furthermore, we are not persuaded by Daniel’s reliance on the term in the parties’ handwritten contract indicating that Hutchenson would provide repair work for Daniel’s “dwelling.” We are not, in resolving this appeal, confined by the colloquialisms and broad language contained in the parties’ handwritten contract when deciding whether the repairs Hutchenson performed were to Daniel’s residence as that term is precisely and legislatively defined in § 34-14A-2(9). Indeed, it can hardly be said, and there is certainly no evidence indicting, that the parties were contemplating the scope of the term “residence” as defined by statute when drafting their contract. Simply put, we refuse to allow a single reference in the parties’ contract to Daniel’s “dwelling” to define the scope of the work the parties agreed Hutchenson would perform or to influence whether the scope of that work required that Hutchen-son be licensed by the Board before entering that contract and engaging in that work.
Based on the foregoing, we conclude that there is a genuine issue of material fact regarding whether Hutchenson was a “residential home builder” required to have been licensed by the Board in order to enforce his contract with Daniel.[3] As a *917 result, the trial court erred to reversal when it entered a partial summary judgment in favor of Daniel. We reverse that judgment and remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Daniel also filed a counterclaim against Hutchenson in which he asserted, essentially, that Hutchenson had committed fraud when he provided Daniel with the $45,000 estimate for the repair work Daniel was seeking to have completed. The trial court has not, as yet, resolved the merits of Daniel’s counterclaim, and the counterclaim is not at issue in this appeal.

. On June 4, 2009, Daniel filed a motion to dismiss the appeal. He argued that the partial summary judgment did not constitute a final, appealable judgment because his counterclaim remained pending in the trial court. See supra n. 1. Hutehenson responded by filing a motion to stay the appeal and to remand the cause to the trial court for that court's consideration of a motion to make the partial summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P. This court granted Hutchenson's motion and reinvested the trial court with jurisdiction for 14 days within which to enter, if appropriate, an order making the partial summary judgment a final judgment pursuant to Rule 54(b). Upon being reinvested with jurisdiction, the trial court certified the partial summary judgment as a final judgment pursuant to Rule 54(b). Subsequently, and as a result, this court denied Daniel’s motion to dismiss the appeal.

. In reaching this conclusion, we have not considered the Board’s advisory opinion is *917 sued to Hutchenson, and we take no position with regard to the Board’s view that whether the builder employed a subcontractor or performed work related to the structural integrity of a house make a difference in determining whether the builder is a "residential home builder” as defined in § 34-14A-2(10). Thus, we do not address Daniel’s contention that the Board's advisory opinion is not persuasive because, Daniel asserts, Hutchenson supplied the Board with inaccurate information.